IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

JOHNCO MATERIALS, INC.,                CASE NO.: CV-06-2:06CV993-10

    Plaintiff,

vs.

CONRAD YELVINGTON
DISTRIBUTORS, INC.,

    Defendant.
_____/

## ANSWER TO COMPLAINT

    Comes now, the defendant in the above styled cause, hereby answers the allegations expressed in the Complaint filed on or about November 1, 2006, by stating the following:

**Parties**

1. The plaintiff is a corporation organized and existing under the laws of the State of Alabama, with its principal place of business in Lowndes County, Alabama.

    **ANSWER:** Admitted for jurisdictional purposes only.

2. The defendant is a corporation which, on information and belief, is organized and existing under laws of the State of Florida, with its principal place of business in Volusia County, Florida.

    **ANSWER:** Admitted for jurisdictional purposes only.

## Jurisdiction and Venue

3. The plaintiff pleads causes of action arising under the statutory and common law of the State of Alabama. Further, the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states. Jurisdiction is proper in this Court under 28 U.S.C. Section 1332.

   **ANSWER:   Admitted for jurisdictional purposes only.**

4. All actions, conduct, and omissions occurred in Lowndes County, State of Alabama. Venue of this action is proper in this Court.

   **ANSWER:   Admitted for the purpose of establishing venue only.**

5. On or about the 28th date of April 2004, the plaintiff and the defendant entered into a contract, viz: "Supply Agreement" (hereinafter, "Agreement"). A true and correct copy of the Agreement was attached to the Complaint as Exhibit A and intended to be incorporated herein by reference as if fully set out hereafter.

   **ANSWER:   Admitted.**

6. Under the Agreement, the plaintiff agreed to construct a mining facility in Lowndes Court, Alabama for the production of to-wit: No. 67 concrete gravel. The plaintiff invested approximately four million ($4,000,000.00) dollars in capital expenses to build and place into operation said facility, in reliance upon the exchange of promises memorialized in the Agreement. The plaintiff avers that it bought real property, built a dredge, constructed a plant and railroad spur, and staffed the facility in reliance upon the Agreement.

   **ANSWER: The Agreement speaks for itself. Defendant admits plaintiff's performance under the agreement was conditioned upon the construction of a mining facility in Lowndes County, Alabama. However, defendant denies that plaintiff agreed to construct a mining facility in Lowndes Court, Alabama as consideration for the Agreement, or solely for the production of No. 67 concrete gravel. Defendant denies, for lack of knowledge, the remainder of paragraph six (6), as it states the extent of plaintiffs's investment.**

7. The defendant agreed, following commencement of mining and grading of gravel by the plaintiff, to purchase quantities of No. 67 concrete gravel at a rate of approximately 5,200 tons per week, to be loaded F.O.B. on defendant's rail cars at the plaintiff's plant site.

   **ANSWER:   All allegations are denied. The Agreement speaks for itself.**

8. The defendant agreed to purchase said gravel at a rate of $5.25 per ton. The price per ton was to remain fixed for twenty-four (24) months from April 28, 2004, thereafter to be increased by five (5%) percent after April 28, 2006; by two-and-one-half (2.5%) percent on April 28, 2007; and again by two-and-one-half (2.5%) percent on April 28, 2008.

   **ANSWER:   Defendant denies that the price was to remain fixed for twenty-four (24) months from April 28, 2004. As to the remaining allegations, the Agreement speaks for itself.**

9. Plaintiff commenced mining and grading in March 2006. At all times relevant to this Complaint, the plaintiff was ready, willing and able to perform under the Agreement, and did perform fully under the Agreement, and has complied with all provisions of the Agreement.

   **ANSWER:   Defendant denies, for lack of knowledge, that plaintiff commenced mining and grading in March 2006. Defendant denies all other allegations.**

10. Subsequent to march 1, 2006, the plaintiff produced and the defendant took the following quantities of No. 67 concrete gravel:

    | | | |
    |---|---|---|
    | 1. | May 11, 2006: | 6,000 tons |
    | 2. | June 27, 2006: | 2,000 tons |
    | 3. | August 8, 2006: | 6,000 tons |
    | 4. | August 21, 2006: | 6,000 tons |
    | 5. | September 7, 2006: | 6,000 tons |
    | 6. | September 25, 2006: | 6,000 tons |
    | | | 32,000 tons |

    **ANSWER:   Admitted.**

11. Therefore, for the 28 (twenty-eight) weeks beginning in March 2006 when plaintiff commenced mining and grading, and through October 1, 2006, defendant was to have purchased and taken 145,600 tons of gravel. Defendant during said period actually purchased and took 32,000 tons of gravel.

> **ANSWER:** **Defendant denies that defendant was to have taken 145,600 tons of gravel beginning in March 2006. Defendant admits to purchasing 32,000 tons of gravel during said period. As for all other allegations, the Agreement speaks for itself.**

12. In October 2006, the plaintiff was forced to cease operations due to financial constraints on plaintiff's operations by reason of defendant's failure to perform.

> **ANSWER:** **Defendant admits that plaintiff ceased operations. The remainder of the allegations are denied.**

### Count One

13. The plaintiff adopts and incorporates the allegations of the preceding paragraphs of the complaint as if fully set out hereafter.

> **ANSWER:** **These allegations have been previously answered. Such answers are incorporated herein.**

14. The defendant has breached the contract between the parties, by failing to perform under the Agreement, viz: the defendant failed to purchase and take gravel in the quantities specified and anticipated under the Agreement, and with the frequency specified and anticipated in the Agreement.

> **ANSWER:** **Denied.**

15. The defendant's breach of the contract has proximately resulted in damage and injury to the plaintiff, viz:

   a. The plaintiff is entitled to the value of No. 67 gravel which the defendant should have purchased and taken between March 1, 2066 and October 1, 2006 but did not in fact purchase and take, to-wit: $729,960.00. (Plaintiff is entitled to $218,400.00, or the value of 41,600 tons for 8 weeks from March 1 to April 28, 2006, at the original contract rate of $5.25 per ton. Plaintiff is further entitled to $511,560.00, or the value of 124,800.)

      **ANSWER:    Denied.**

   b. The plaintiff is entitled to benefit of its bargain as to prospective sales under the contract, in the amount of $4,234,500.00 for 150,000 tons contracted for annually through the Agreement term of May 11, 2011.

      **ANSWER:    Denied.**

   c. The plaintiff is entitled to contractual damages in the amount of $4,000,000.00 dollars to build and place into operation the Lowndes County facility, consisting of real property, building of a dredge, construction of a plant and railroad spur, and the staffing of the facility in reliance upon the Agreement.

      **ANSWER:    Denied.**

## AFFIRMATIVE DEFENSES

<u>First Affirmative Defense</u>

Plaintiff failed to state a claim on which relief may be granted.

<u>Second Affirmative Defense</u>

Plaintiff failed to sufficiently mitigate the damages alleged.

<u>Third Affirmative Defense</u>

Plaintiff breached the Agreement prior to any purported breach by the defendant.

<u>Fourth Affirmative Defense</u>

Plaintiff was unable to perform its obligations under the Agreement as it was unable to produce the amount of aggregate required by the Agreement, and as such plaintiff should be estopped from asserting that defendant breached the Agreement.

<u>Fifth Affirmative Defense</u>

Plaintiff was unable to perform its obligations under the Agreement as it was unable to maintain its operation for reasons unrelated to any action by defendant, and plaintiff chose to cease operations. As such, plaintiff waived its right to enforce the Agreement against defendant.

<u>Sixth Affirmative Defense</u>

Plaintiff's claim must fail as the exhibits to the complaint refute the allegations of the complaint.

<u>Seventh Affirmative Defense</u>

The damages sought by plaintiff are not legally permissible in the action brought, and are otherwise not rationally related to the alleged injuries. Further, should the damages sought continue as a part of this action to a determination, defendant is entitled to a set off for those amounts sought by plaintiff that would have been incurred by plaintiff regardless of any act of defendant, and further plaintiff should be estopped from seeking damages for that period of time during which plaintiff was unable to produce aggregate as it was obligated under the Agreement.

Eighth Affirmative Defense

Plaintiff's action should be barred by the doctrine of unclean hands. For every 3 pieces of No. 67 gravel mined, there are 7 pieces of byproduct, usually sand and oversized gravel. Such byproduct must either be sold or stored. Plaintiff's business model relied upon the sale of the byproduct to ensure the viability of the enterprise. Plaintiff was unable to dispose of the byproduct, and ultimately it's inability to sell the byproduct ultimately adversely affected it's ability to mine No. 67 gravel. As a result, the enterprise faltered and was unprofitable.

Plaintiff began efforts to sell the mine and located at least two buyers. The buyers were unwilling to purchase the enterprise subject to the Agreement between plaintiff and defendant. After being unable to procure a voluntary release from the Agreement, plaintiff initiated this lawsuit to pressure the defendant into releasing it from the Agreement thereby allowing the sale of the mine.

Ninth Affirmative Defense

The terms of the Agreement are explained or supplemented by the parties' course of dealings.

## COUNTERCLAIM

Comes now the counter-plaintiff, Conrad Yelvington Distributors, Inc. (CYDI), and makes the following complaint against counter-defendant, Johnco Materials, Inc. (Johnco), and states the following causes of action:

1. CYDI is corporation which is organized and existing under the laws of the State of Florida, with it's principal place of business in Volusia County, Florida.

2. Johnco is a corporation organized and existing under the laws of the State of Alabama, with it's principal place of business in Lowndes County, Alabama.

3. Yelvington pleads causes of action arising out a contract between the parties, and is currently the defendant in an action in this Court brought by Johnco. The matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, and is between citizens of different states. Jurisdiction is proper in this Court under 28 U.S.C. § 1332.

4. Venue is proper in this Court as Lowndes County, Alabama is the county in which Johnco principal place of business is located.

## Count I - Breach of Contract

5. Johnco and CYDI entered into an agreement on or about April 28, 2004 (the "Agreement"). A true and correct copy of the Agreement was made a part of the underlying action by Johnco against CYDI, and filed with this Court as part of the underlying action.

6. Under the Agreement, Johnco had a duty to produce No. 67 gravel at a minimum of 150,000 tons per year.

7. Further, Johnco was obligated to deliver No. 67 gravel at a rate of $5.25 per ton, F.O.B. CYDI's cars rail side, with a capacity of 5,200 tons per week, for whatever week that such train is scheduled.

8. Johnco breached it's obligation to CYDI by failing to deliver the minimum amount of No. 67 gravel as required by the Agreement at $5.25 per ton, and by failing to deliver No. 67 gravel F.O.B. CYDI's cars rail side, with a capacity of 5,200 tons per week, for whatever week that such train was scheduled.

9. Johnco's breach of the Agreement caused damage to CYDI as the current market price of No. 67 gravel greatly exceeds $5.25 per ton, and is the direct and proximate cause of CYDI's continuing damages. As of the time of filing this counterclaim, No. 67 gravel costs approximately $7.50 per ton.

WHEREFORE, CYDI seeks judgment against Johnco for damages in such amount as is determined at trial, and such other relief as may be just and proper as the circumstances and evidence may dictate.

Respectfully submitted,

/s/ Angela R. Rogers
Charles A. Stewart III (STE067)
Angela R. Rogers (RAI017)
**Bradley Arant Rose & White LLP**
The Alabama Center for Commerce
401 Adams Avenue, Suite 780
Montgomery, AL 36104
Telephone: 334.956.7700
Facsimile: 334.956.7701

**Attorneys for Defendant,
Conrad Yelvington Distributors, Inc.**

## CERTIFICATE OF SERVICE

       I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following on this 5th day of December:

> H. Gregory Pearson, Esquire
> Charles E. Harrison, Esquire
> Junkin, Pearson, Harrison, & Junkin, L.L.C.
> 601 Greensboro Avenue
> Suite 600, Alston Place
> Tuscaloosa, AL 35401

and I hereby certify that I have mailed by U.S. Postal Service the document to the following non-CM/ECF participants: None.

> /s/ Angela R. Rogers
> Angela R. Rogers (RAI017)
> **Bradley Arant Rose & White LLP**
> The Alabama Center for Commerce
> 401 Adams Avenue, Suite 780
> Montgomery, AL 36104
> Telephone: 334.956.7700
> Facsimile: 334.956.7701
> E-mail: arogers@bradleyarant.com