IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JOHNCO MATERIALS, INC.,                    CASE NO.: CV-06-2:06CV993-ID

    Plaintiff,

vs.

CONRAD YELVINGTON
DISTRIBUTORS, INC.,

    Defendant.
_____/

**DEFENDANT'S, CONRAD YELVINGTON DISTRIBUTORS, INC.,
MOTION FOR PARTIAL SUMMARY JUDGMENT**

    COMES NOW the Defendant, CONRAD YELVINGTON DISTRIBUTORS, INC. ("CYDI"), by and through its undersigned counsel, and moves this Court pursuant to Fed.R.Civ.P. 56 to enter partial summary judgment in its favor and against Plaintiff, JOHNCO MATERIALS, INC. ("Johnco"), and in support thereof states as follows:

    1.    On or about April 16, 2004, Johnco and CYDI entered into the Supply Agreement for No. 67 gravel attached to the Complaint as Exhibit "A," the terms of which are incorporated by reference as if fully set forth herein.

    2.    Johnco filed suit against CYDI for breach of contract, alleging that Johnco was at all times ready, willing, and able to comply with the Supply Agreement, but CYDI refused to purchase the requisite quantities of No. 67 gravel. Complaint, ¶13-15.

    3.    CYDI counterclaimed against Johnco for breach of contract, alleging that Johnco breached the Supply Agreement by failing to deliver the requisite quantities of No. 67 gravel. Answer and Counterclaim, ¶8.

4. Johnco began in 2002 as the idea of brothers, Presley Morgan Johnston ("Pep") and James Benjamin Johnston ("Ben"). Depo. of P. Johnston, p. 16. Johnco was originally owned equal parts and operated by the Johnstons. Depo. of P. Johnston, p. 12.

5. The Johnstons decided to explore the possibility of starting a sand and gravel mining operation, contacted the owner of a piece of property that they knew to have a gravel deposit, Don Freeman, and inquired about whether he was interested in leasing the property to them. Freeman declined to lease the property, but agreed to sell the property to the Johnstons. The Johnstons took an option to purchase the property, and began investigating to see whether there was a market for the gravel. The property is located in Whitehall in Lowndes County, Alabama. Depo. of P. Johnston, p. 16.

6. The Johnstons learned of CYDI from Elmore Sand and Gravel, and contacted CYDI to inquire if it would be interested in purchasing gravel from the Johnstons. CYDI could commit to the purchase of 50,000 tons of gravel per year at $4.50/ton, which did not meet the Johnstons' expectations. After some time, CYDI contacted the Johnstons and advised them that they were now able to purchase 150,000 tons of No. 67 gravel per year at an initial price of $5.25/ton, and the parties began the negotiation of what became the Supply Agreement that is at the heart of this lawsuit. At some point in time during the negotiations but before the property was purchased, Johnco Materials, Inc. was incorporated. Depo. of P. Johnston, pp. 17-19.

7. At the time the Supply Agreement was entered into, Johnco anticipated that the mine would produce a product mix of 55% sand to 45% gravel. Of the 45% gravel produced, 80-85% could be processed into No. 67 gravel, with the remainder being oversized gravel. Depo. of B. Johnston, p. 39, and Exhibit 5 to the Deposition of P. Johnston.

2

8.  Initially, the founders of Johnco thought there would not be a market for the sale of sand. Johnco was contacted by a potential buyer for the sand, LaFarge, but nothing materialized, and Johnco determined that it did not have a market for the sand. Depo. of P. Johnston, pp. 26-27. "Sand was not a big part of [Johnco's] plans at all." Depo. of B. Johnston, p. 40.

9.  The Supply Agreement was executed on or about April 16, 2004, and conditioned on Johnco's construction of a mining facility on the property within twelve (12) months. *See* Supply Agreement, para. 2.1. The Supply Agreement provides that CYDI will purchase a minimum of 150,000 tons annually from the plant site, f.o.b. buyer's rail cars loaded at the Plant Site. *See* Supply Agreement, para. 3.1. The term of the Supply Agreement was five (5) years from the date of the first shipment. *See* Supply Agreement, para. 4.

10. Prior to the filing of this lawsuit, the Johnston's sold their interests in Johnco to Clatus Junkin, who is the sole owner of Johnco today. Depo. of P. Johnston, p. 13.

11. On August 8, 2007, Johnco filed Plaintiff's Designation of Expert Witnesses, which is the last statement of damages asserted by Johnco. Johnco designated Mr. Les Alexander to testify as an expert to Johnco's damages. Johnco asserts that CYDI is liable for damages including: 1) Johnco's expected lost profits from the sale of No. 67 gravel to CYDI under the Supply Agreement and from the sale of the by-products of the production of No. 67 gravel (totaling $4,473,873); 2) the purchase price of the property on which the mining facility was located ($1.6 million); 3) the cost of operating the mining facility (including the cost of depreciable plant and rail equipment, and the cost of employees to perform it's obligations under the Supply Agreement) (totaling $1.2 million); and 4) incidental costs purportedly attributable to

3

the breach of the Supply Agreement, including delay (totaling $75,342).[1]  See Plaintiff's Designation of Expert Witnesses (Doc. 22) ("Alexander Report"), filed August 8, 2007.

12.     There are no material facts in dispute that are relevant to the issues raised in this motion, and CYDI is entitled to judgment as a matter of law in its favor on the issue of its liability for certain claims of damages by Johnco.

### Memorandum of Law

I.     Summary Judgment Standard

Summary judgment is proper under the following conditions:

> The pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

Fed.R.Civ.P. 56(c). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those materials that demonstrate the absence of a genuine issue of material fact. Generally, where a defendant is moving for summary judgment on the plaintiff's claim, the defendant may satisfy this burden in one of two ways. The defendant may submit evidence that negates an essential element of the plaintiff's claim (*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986)), or the defendant may show that there is no

---

[1] Johnco alleged in its complaint that it suffered damages in excess of $8 million, consisting of lost profits of $4,964,460 and damages related to the real property acquisition and construction costs totaling $4,000,000. Complaint, ¶15. In its Rule 26 Disclosures, Johnco alleged an unspecified amount of total damages that included costs associated with the construction and use of a rail spur, the $1.7 million purchase price of the real property, capital and other expenditures, interest on the related debt, lost profits, and lost business opportunities. Plaintiffs Fed.R.Civ.P. 26(A)(1) Disclosures, ¶C. Johnco has apparently reduced and/or narrowed these claims to the $7.3 million set forth in the Alexander Report.

4

evidence to support an essential element of the plaintiff's claim. *Id.* at 325. It is not necessary that the defendant introduce evidence that negates the plaintiff's claim. *Id.* at 323.

Once the movant satisfies this requirement, the burden shifts to the non-moving party to come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 584 (1986). If there is no genuine issue of material fact, the court may enter judgment as a matter of law. Fed.R.Civ.P. 56(c).

Partial summary judgment is an appropriate mechanism by which a court can address and/or limit the types of damages recoverable in an action. See, e.g., *Amber Resources Co. v. United States*, 73 Fed.Cl. 738 (2006) (holding plaintiff can recover reliance damages but not sunk costs); *Precision Pine & Timber, Inc. v. United States*, 63 Fed.Cl. 122 (2004) (holding plaintiff entitled to recover only certain types of consequential damages).

II.   The Law of Damages in a Breach of Contract Action

In October 2006, the Supreme Court of Alabama issued in an opinion in *Goolesby v. Koch Farms, LLC*, 955 So.2d 422 (Ala. 2006), setting out setting out the types of damages available in a breach of contract action. As a general rule, damages in a breach of contract action are the non-breaching party's expectation interest, or "that sum which would place the injured party in the same condition he would have occupied if the contract had not been breached." *Goolesby*, 955 So.2d at 427-428. These damages are those that flow naturally from the breach. *Garrett v. Sun Plaza Development Company*, 580 So.2d 1317, 1320 (Ala. 1991). The injured party is not to be put in a better position than that in which he would have been had the contract been performed completely. *Id.* To determine the expectation interest of a party to a contract, the court looked to the amount of money the non-breaching party could have reasonably expected to earn from the contract, minus the expenses incurred in performing under the

contract. *Goolesby,* at 428. Lost profits are not recoverable if: 1) they are not the immediate fruits of the principal contract, but are dependent collateral engagements not brought to the notice of the contracting parties because they are too remote to be recovered by the injured party, and 2) may not be recovered if the lost profits sought are too speculative. *Garrett,* 580 at 1320.

Additionally, the Commercial Code of the Code of Alabama distinguishes between incidental damages and consequential damages. See, e.g., Ala. Code §7-2-715. Although a buyer is able to recover both incidental and consequential damages for a seller's breach of a contract for the sale of goods (see Ala. Code §7-2-715), the Code provides only that a seller may recover incidental[2], but not consequential, damages for a buyer's breach of contract (see Ala. Code §7-2-710). Alabama common law, however, allows a seller to recover consequential damages in certain situations but only if such damages are "capable of ascertainment with reasonable, or sufficient certainty, or there must be some basis on which a reasonable estimate of the amount of the [damages] can be made..." *Goolesby,* 955 So.2d at 428.

III. CYDI is not Liable to Johnco for Damages Relating to Lost Profits from the Potential Sale of Oversize Gravel or Sand to Third-Parties

Here, it is undisputed that the only product that CYDI was obligated to purchase from Johnco under the Supply Agreement was No. 67 gravel. Thus, the only expectation damages that flow immediately from the alleged breach of the Supply Agreement are those relating to the sale of No. 67 gravel. Johnco contends, however, that it is entitled to recover from CYDI it's lost profit from the sale of the "by-products" (i.e., sand and oversize gravel) of the production of No. 67 gravel, assuming production of 260,000 tons of No. 67 gravel annually over five (5) years,

---

[2] Incidental damages include "any commercially reasonable charges, expenses or commissions incurred in stopping delivery, in the transportation, care and custody of goods after the buyer's breach, in connection with return or resale of the goods or otherwise resulting from the breach." Ala. Code §7-2-710.

minus the cost of production, and assuming a market and willing buyer for the same. *See* Alexander Report, p.2 or 4, and Appendix 2 to same. Johnco folds the lost profits from the sale of by-products into the lost profits from the sale of No. 67 gravel to CYDI, and alleges a total lost profit of $4,473,873 inclusive of both potential sales. *Id.*

It is undisputed that Johnco did not have a plan for the sale of oversized gravel at the time Johnco entered into the Supply Agreement. Depo. of B. Johnston, p. 42. Discovery in this case adduced no evidence that Johnco had any contract, agreement or arrangement of any kind to sell oversized gravel to any customer prior to the Supply Agreement, nor on a regular basis at any time since. Pep Johnston was unable to recall whether Johnco sold any oversized gravel to any customer during the two year period from the founding of the company to his departure from the company. Depo. of P. Johnston, pp. 51, 101-102.

Moreover, Pep Johnston admits that he did not expect Johnco to have a market for the sale of sand at the time it entered into the Supply Agreement. Specifically, Johnston testified that "initially we thought we wouldn't have a market for the sand. After we were set up, Lafarge in Atlanta -- well, Keith Bodiford works for them, came by and wanted to know if we would sell some sand, and we made him a price and took some samples over there. It never did materialize, though," and while he thought there may be "possibilities", the reality was that "there was no market for [sand]." Depo. of P. Johnston at 26-27.

Assuming that Johnco can prove CYDI breached the Supply Agreement, Johnco would be entitled to the amount of damages that would place it in the same condition it would have occupied if the Supply Agreement had been performed. The Supply Agreement did not obligate CYDI to purchase any by-product from Johnco, and there is no evidence that the sale of by-products was considered in any way by the parties in negotiating the Supply Agreement. Johnco

7

procured no agreements for the sale of by-products prior to entering the Supply Agreement, had no source for the regular disposition of sand prior to this lawsuit and consummated only sporadic sales of oversized gravel at any time during the operation of Johnco. The sale of the by-products cannot be said to be "the immediate fruits" of the Supply Agreement and is entirely dependent on collateral engagements not brought to the notice of the contracting parties. Therefore, CYDI is not liable for, and Johnco cannot recover, any amount of lost profit relating to the sale of by-products.

IV. <u>CYDI is not Liable to Johnco for Damages Relating to the Start-Up Costs, the Land Costs to Purchase the Plant Site; the Costs to Construct the Mining Facility; and the Costs to Acquire Depreciable Plant and Rail Car Loading Equipment.</u>

Johnco seeks to recover it's start-up costs, including expenses incurred in the months of March and April 2006, prior to the first purchase of No. 67 gravel by CYDI, and salaries, payroll taxes, insurance, and repairs attendant to establishing the operation. See Alexander Report, Appendix 5. Johnco also seeks to recover the land cost of the Plant Site, approximately $1.6 million, and the costs of purchasing depreciable plant and rail car loading equipment, at a cost of over $1.2 million. See Alexander Report, Page 2 of 4.

Johnco asserts, essentially, that it relied on CYDI's promised performance under the Supply Agreement in undertaking the mining operation. The Alabama Supreme Court has ruled, however, "[s]uch damages, referred to as 'reliance damages,' are generally awarded in lieu of, not in addition to, expectation damages." *Goolesby*, 955 So.2d at 428-29. The Court stated:

> If allowed to recover both the lost contract income and reliance damages, the Goolesbys would be placed in a better economic position than if there had been full performance of the grower contract. This is not the proper purpose of contract damages, and the trial court was correct in excluding reliance damages from its calculations.

*Id.* at 429. The Court held:

> The trial court correctly limited damages to the Goolesbys' lost net income under the grower contract, excluding consequential damages and damages based on the Goolesbys' investment expenditures in reliance on the contract.

*Id.* at 429.

Under the rationale of *Goolesby*, Johnco is not permitted under Alabama law to recover both its expectation and reliance damages, as such would necessarily result in a windfall for Johnco. Moreover, Johnco continues in operation today and sells its products to one or more other buyers. Depo. of C. Junkin, p. 127. Thus, if permitted to recover both its reliance damages and its expectation damages Johnco would incur no cost in setting up the mining facility, while also receiving all of the profit from the mining operations. This is not permitted as a matter of law.

These damages sought by Johnco are not recoverable under Alabama law, because they do not result from the alleged breach of the Supply Agreement by CYDI and would put Johnco in a better position than it would have been had the Supply Agreement been performed. CYDI's obligation to purchase No. 67 gravel under the Supply Agreement was conditioned on Johnco undertaking construction of a mining facility and railroad siding, but the financial burden of building such was always Johnco's to bear.

WHEREFORE, the defendant respectfully requests this Court to enter partial summary judgment in its favor and against Plaintiff making the following determinations:

a. Johnco's cannot recover damages for costs incurred to purchase the Plant Site, construct the mining facility, or acquire depreciable plant and rail car loading equipment; and

b. Johnco cannot recover damages for lost sales of oversize gravel or sand to third-parties;

  c.  The appropriate measure of damages for Johnco's breach of contract action, if proven, is lost income under the Supply Agreement.

*COBB & COLE*

By:  /s/ Thomas J. Leek
   THOMAS J. LEEK
   FLA. BAR NO. 0116408
   150 Magnolia Avenue
   Post Office Box 2491
   Daytona Beach, FL 32115-2491
   Telephone: (386) 255-8171
   Facsimile: (386) 323-9255
   E-mail: Tom.Leek@CobbCole.com
   CO-COUNSEL FOR DEFENDANT

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY I HEREBY CERTIFY that on the 15th day of October, 2007, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to:

H. Gregory Pearson, Esquire
Charles E. Harrison, Esquire
Junkin, Pearson, Harrison, & Junkin, L.L.C.
601 Greensboro Avenue
Suite 600, Alston Place
Tuscaloosa, AL 35401

Angela R. Rogers
Bradley Arant Rose & White LLP
The Alabama Center for Commerce
401 Adams Avenue, Suite 780
Montgomery, AL 36104

       /s/ Thomas J. Leek
       Attorney