**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA**

| | | |
|---|---|---|
| **JOHNCO MATERIALS, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No.** |
| **vs.** | ) | **2:06cv993-ID** |
| | ) | |
| **CONRAD YELVINGTON** | ) | **(OPPOSED)** |
| **DISTRIBUTORS, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**<u>AMENDED MOTION TO QUASH CIVIL SUBPOENA</u>**

Comes now Johnco Materials, Inc., the defendant in the above-styled cause, and, pursuant to FED.R.CIV.P. 45(c)(3), respectfully files this Amended Motion to quash that certain Subpoena In A Civil Case, notice of intent as to which was provided on or about the 3rd day of December 2007 by the defendant Conrad Yelvington Distributors, Inc. ("CYDI") to a third party, viz: Dunn Construction Company, 3905 Messer Airport Highway, Birmingham, Alabama 35222.

As grounds for this motion, the plaintiff would show as follows:

1.    On or about December 3, 2007, counsel for the plaintiff was served with Notice Of Production from Non-Party, executed by counsel for the defendant.  Said Notice attached a proposed Subpoena In A Civil Case directed at Dunn Construction Company ("Dunn"), a non-party.

2.    This motion is made and served within fourteen (14) days of the date of the service of said notice, and within a presumptively reasonable time under FED.R.CIV.P. 45(c)(3).  *See* <u>Tutor-Saliba Corp. v. U.S.</u>, 30 Fed.Cl. 155, 156 (Fed. Cl. 1993) (rule implicitly requires  motion to quash a subpoena be filed within fourteen days of service).

3.    Said Subpoena is by its terms to be issued to Dunn Construction Company for production of the following "documents relevant to the following topics":

**Johnco's relationship with Dunn Construction Company, including but not limited to, any and all negotiations**

**between Johnco and Dunn regarding the purchase and sale of sand and/or gravel from Johnco.**

4.    The defendant objects to the issuance of the Subpoena on the following grounds: (1) the information sought is not reasonably calculated to lead to the discovery of evidence upon trial of this matter; (2) production as sought by the subpoena will subject the non-party to an undue burden; and (3) production as sought by the subpoena would result in disclosure of a trade secret or other confidential research, development, or commercial information.

5.    CYDI seeks through the subpoena to discover information relating to Johnco's current negotiations to sell No. 57 gravel to Dunn, a potential competitor to CYDI. The information sought by way of the subpoena is in no way related to the allegations of the Complaint of Johnco, or the defenses or counterclaim asserted by CYDI in its Answer. It is nothing more than an improper attempt by CYDI to misuse

information obtained by CYDI during settlement negotiations of this case in order to pry into confidential information and create unfair leverage.

6.     CYDI is a distributor of construction materials, including crushed stone, aggregate, sand, and gravel. On April 16, 2004, CYDI and Johnco entered into a contract ("Supply Agreement") for Johnco to construct and operate a mining facility to supply CYDI with No. 67 gravel, 3/4" to 3/8" in size. CYDI sought to ensure a supply of No. 67 gravel to re-sell to customers for use in ready-mix concrete.

7.     The Supply Agreement called for CYDI to take a regular weekly shipments of 5,200 tons per week and a requirement to take minimum of 150,000 tons of No. 67 gravel per year after Johnco began production. The Supply Agreement gave CYDI a right of first refusal on all No. 67 gravel actually produced by Johnco above the 150,000 tons annual minimum.

4

8.    Johnco, utilizing a dredge operation, began to produce No. 67 gravel by fall 2005. It became fully operational by February 2006, capable of producing 300,000 tons of No. 67 annually. Despite Johnco commencement of mining and production of No. 67 gravel in February 2006, CYDI did not order its first train load of No. 67 gravel until May 11, 2006. Including the initial load on May 11, 2006, CYDI — despite Johnco's attempts to have CYDI take its production — ordered only five-and-a half trainloads of No. 67 gravel, amounting to a total of only 32,000 tons of gravel, in the first nine months of production.

9.    On October 19, 2006, Johnco notified CYDI that CYDI was in breach of the Supply Agreement.

10.    Johnco then ceased mining operations in November 2006 until March or April 2007, when it began constructing new "dry" production facilities to produce No. 57 gravel — a larger grade of gravel used in

asphalt paving. Johnco did not produce No. 67 gravel after the November 2006 shut down.

11.    In and around March or April 2007 Johnco began negotiating with Dunn for the production and sale of No. 57 gravel for asphalt paving. Dunn is a construction business in Birmingham, Alabama, and is a potential competitor of CYDI. At no time before the spring of 2007, which was long after CYDI's breach of the Supply Agreement, did Johnco have any communications or contact with Dunn regarding the sale of any product.

12.    Through the latter half of 2007, Johnco and CYDI have engaged in informal discussions relating to possible settlement of this litigation. On October 31, 2007, the parties by and through counsel informed this Court as follows:

    1.    That counsel for all parties, together with principals of all parties, conducted a face-to-face settlement

conference at the offices of counsel for the plaintiff in Tuscaloosa, Alabama, on Monday, October 29, 2007, at which counsel and parties engaged in good-faith settlement negotiations.

2.    That settlement was not reached at such settlement conference, but that counsel and parties are encouraged by the progress made at the conference.

3.    That counsel and parties feel that Monday's conference resulted in discussion of a number of options which the parties can explore and structure a possible future settlement, and that counsel and parties are committed to pursuing due diligence and a course of negotiation to see if settlement can be reached.

13.    During and in the furtherance of these settlement discussions, Johnco in good faith made CYDI aware of the current and ongoing negotiations between Dunn and Johnco regarding production and sale of No. 57 gravel.

**The Information Sought Is Not Reasonably Calculated to Lead to the Discovery of Evidence upon Trial of this Matter**

14.    The information CYDI seeks by way of the subpoena to Dunn is not relevant to the dispute between CYDI and Johnco.  Nor will the information, if produced, be calculated to lead to the discovery of evidence which will be admissible upon trial of this cause.

15.    A party is entitled to discovery only to the extent that the discovery is reasonably calculated to lead to the discovery of admissible evidence.  Fed.R.Civ.P. 26; Degen v. U.S., 517 U.S. 820, 135 L.Ed.2d 102, 116 S. Ct. 1777, 64 U.S.L.W. 4413 (U.S. 1996).  Such is not the case here. The negotiations toward any agreement with Dunn are not material or relevant to the Supply Agreement or CYDI's breach thereof.

16.    CYDI cannot claim that the requested information is relevant to an inquiry into mitigation of damages.  CYDI breached the Supply

Agreement by no later than October 2006, resulting in Johnco shutting down its dredging operation for No. 67 gravel in November 2006. The Supply Agreement with CYDI was solely to supply No. 67 gravel for use in ready-mix concrete. The negotiations with Dunn, on the other hand, relate to a "dry" mining operation from a different pit (quite apart from the "wet" operation of the dredge in the original pit), for production of No. 57 gravel, an entirely different grade of gravel used in asphalt paving. These negotiations occurred no earlier than spring 2007, well after CYDI's breach. Moreover, the gravel to be produced is to be used in asphalt, a use wholly separate from ready-mix concrete. Johnco could well have produced sufficient No. 67 gravel from its "wet" dredging operation while producing No. 57 gravel for other sources from a new "dry" mining operation.

17.    The information relating to the Dunn negotiations and any relationship between Johnco and Dunn is wholly immaterial to the issues presented in this litigation. Johnco was obligated only to produce No. 67

gravel for CYDI, and CYDI was obliged only to take No. 67 gravel. Johnco's production of No. 57 gravel — a production which necessitated the building of new facilities to mine a different pit and produce a different grade of gravel for a different source and for a different purpose — has absolutely nothing to do with this litigation. CYDI is not entitled to production of the requested information under Rule 26.

### Production as Sought by the Subpoena Will Subject the Non-party to an Undue Burden

18. CYDI seeks production of "documents relevant to... Johnco's relationship with Dunn Construction Company, including but not limited to, any and all negotiations between Johnco and Dunn regarding the purchase and sale of sand and/or gravel from Johnco."

19. The overbreadth and vagueness of this request poses an undue burden on the non-party to determine which documents comply with the request.

10

20.    The "Guidelines To Civil Discovery Practice In The Middle District of Alabama" state that a request for production of documents should be "reasonably particularized," and frowns upon a request for "each and every document" of a given nature.  The range of documents sought here would cause investigation of the scope of the request to be unreasonably burdensome.


**Production as Sought by the Subpoena Would Result in Disclosure of Commercial Information**


21.    Finally, and most troubling, CYDI demonstrates its bad faith in taking sensitive information which Johnco provided in good faith during settlement negotiations, and seeking to use that information as the basis for prying into confidential and commercial information of Johnco's dealings with CYDI's competitor Dunn.

11

22.     Confidential commercial information is information which, if disclosed, would cause substantial economic harm to the competitive position of the entity from whom the information was obtained. <u>Diamond State Ins. Co. v. Rebel Oil Co.</u>, Inc., 157 F.R.D. 691, 697 (D. Nev.1994). It is that information which, if disclosed, would give a competitor an unfair advantage. <u>In re Northwest Airlines Corp</u>., 363 B. R. 704, 706 (Bkrtcy. S.D.N.Y. 2007).

23.     It has become apparent, as Johnco has attempted to settle this case with CYDI, that CYDI is not engaging Johnco in good faith, and that CYDI has been stringing Johnco along in settlement negotiations with the sole aim of discovering information it could then unfairly and prejudicially turn to its advantage.

24.     CYDI is in fact now attempting by means of its subpoena to interfere with the negotiations between Dunn and Johnco for sale of the No. 57 gravel, and to drag Dunn into the middle of this litigation.   It is

deliberately trying to involve Dunn in this litigation to cause Dunn to reconsider its relationship with Johnco, thereby to hurt Johnco financially and give CYDI an unfair leverage in this litigation.

25.    CYDI's attempt to involve Dunn here is consonant with CYDI's strong-arm tactics in attempting to force settlement in this case. Counsel for CYDI, for instance, have informed both counsel for CYDI and Johnco's principal in separate communications that it "knows" of potential problems Johnco is having with rail supply, and that CYDI "can make a phone call and eliminate those problems" if Johnco will dismiss this action against CYDI.    The underlying threat is unmistakable. CYDI now continues its heavy-handedness by misusing information derived through a superficial showing of good faith during settlement negotiations.

26.    The negotiations between Johnco and Dunn for the sale of No. 57 gravel are sensitive and confidential.    Disclosure of the terms of the negotiations would give an unfair advantage to CYDI, a potential

13

competitor of Dunn.   The disclosure of the information sought would throw a chilling effect over the ongoing and current negotiations with Dunn — which is exactly what CYDI intends.

27.    CYDI cannot be permitted to benefit from its abuse of the good faith of Johnco in engaging in settlement negotiations with CYDI. CYDI cannot show any entitlement to the information it seeks.  It cannot demonstrate relevance or materiality.    It seeks to obtain sensitive confidential information for an improper purpose.  It cannot be permitted to misuse the legal process in this manner.

28.    CYDI cannot show a substantial need for the documents that cannot be otherwise met without undue hardship.

29.    Pursuant to FED.R.CIV.P. 26(c), FED.R.CIV.P. 37(a)(2)(B) and ¶5 of this Court's General Order of November 22, 1993, the plaintiff makes written certification that the plaintiff as moving party has conferred and

14

made reasonable good-faith effort to reach agreement with opposing counsel on the matters set forth in this motion, but has been unable to reach agreement. Specifically, the plaintiff has requested that the defendant voluntarily withdraw the subpoena noticed in the defendant's motion, and the defendant has refused to do so.

30.    The plaintiff moves that the Subpoena be quashed, and the Clerk be directed not to issue said Subpoena.

WHEREFORE PREMISES CONSIDERED, Johnco moves that the subpoena propounded by CYDI to the Clerk of this Court for issuance be quashed, and that the Court enter an order directing the Clerk not to issue the Subpoena.

Respectfully submitted,

s/ H. Gregory Pearson
H. Gregory Pearson (ASB-4733-S81H)
Attorney For Plaintiff
email: greg@jphj.net

15

Charles E. Harrison (ASB-9408-N70C)
Attorney For Plaintiff
email: chuck@jphj.net

*OF COUNSEL:*

JUNKIN, PEARSON, HARRISON
   & JUNKIN, L.L.C.
601 Greensboro Avenue
Suite 600 Alston Place
Tuscaloosa, Alabama 35401
Telephone: (205) 366-0111
Telecopier: (205) 391-4780

16

## CERTIFICATE OF SERVICE

Pursuant to FED.R.CIV.P. 5(e) and the Administrative Procedures For Filing, Signing, And Verifying Pleadings and Documents In The District Court Under the Case Management/Electronic Case Files (CM/ECF) System In Civil Cases [General Order No. 2:04-mc-3164], I do hereby certify that I have electronically filed the foregoing Motion to Strike with the Clerk of the Court by uploading same to the Court's CM/ECF web site at http://www.almd.uscourts.gov, which will send notification of such filing to the following:

> Thomas J. Leek, Esq
> COBB & COLE
> 150 Mognolia Avenue
> Post Office Box 2491
> Daytona Beach, FL 32115-2491
>
> George Walker III, Esq.
> David Martin, Esq.
> COPELAND, FRANCO, SCREWS
>   & GILL, P.A.
> 444 S. Perry St.
> Montgomery, Alabama 36101-0347

and I hereby certify that I have mailed by United States Postal Service, properly addressed and first-class postage prepaid and affixed this document to the following non-CM/ECF participants:

> [none]

This the 13th day of December 2007.

Charles E. Harrison (ASB-9408-N70C)

17