IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DISTRICT

JOHNCO MATERIALS, INC.,                    CASE NO.: CV-06-2:06CV993-10

     Plaintiff,

vs.

CONRAD YELVINGTON
DISTRIBUTORS, INC.,

     Defendant.

_____/

## DEFENDANT, CONRAD YELVINGTON DISTRIBUTORS, INC., MEMORANDUM IN OPPOSITION TO MOTION TO QUASH SUBPOENA

Defendant, CONRAD YELVINGTON DISTRIBUTORS, INC. ("CYDI"), by and through its undersigned counsel, files this memorandum in opposition to the Amended Motion to Quash Civil Subpoena of JOHNCO MATERIALS, INC. ("Johnco").

### Background

On or about April 16, 2004, Johnco and CYDI entered into the Supply Agreement for No. 67 gravel attached to the Complaint as Exhibit "A." On November 1, 2006, Johnco initiated this litigation against CYDI for breach of contract, alleging that Johnco was at all times ready, willing, and able to comply with the Supply Agreement, but CYDI refused to purchase the requisite quantities of No. 67 gravel. Complaint, ¶13-15. Johnco is seeking in excess of $8 million in damages from CYDI, including lost profits from the sale of No. 67 gravel and other byproducts and the cost of purchasing the real property, constructing the mining facility and railroad spur, along with expenses related to the purchase of mining equipment. Complaint, ¶15.

1

CYDI filed a counterclaim against Johnco for breach of contract, alleging that Johnco breached the Supply Agreement by failing to deliver the requisite quantities of No. 67 gravel. Answer and Counterclaim, ¶8. Among its affirmative defenses to Johnco's Complaint, CYDI asserted the following: "Plaintiff failed to sufficiently mitigate the damages alleged." Answer and Counterclaim, Second Affirmative Defense.

At various times during this litigation, Johnco has provided CYDI with conflicting information regarding its current business operations, if any. James "Ben" Johnston, one of the founders of Johnco, testified in July 2007 that Johnco was currently operating and mining sand and No. 57 gravel, as did current owner, Clatus Junkin. Deposition Transcripts of James Benjamin Johnston (hereinafter referred to as "Ben Johnston Transcript") 13:13-55; Deposition Transcripts of Clatus Junkin (hereinafter referred to as "Clatus Junkin Transcript"). Copies of the relevant pages of the Ben Johnston Transcript are attached hereto as Composite Exhibit "A;" and copies of the relevant pages of the Clatus Junkin Transcript are attached hereto as Composite Exhibit "B." Mr. Johnston further testified that Johnco was preparing to provide No. 57 gravel to Dunn Construction, Inc. ("Dunn") to be crushed for use in asphalt. Ben Johnston Transcript 14:23; 15:1-19. Without objection, counsel for CYDI asked a series of questions about Johnco's relationship with Dunn. Mr. Johnston was unable to advise, however, whether there was a contract in place between Dunn and Johnco or how much gravel Dunn intended to purchase annually from Johnco. Ben Johnston Transcript 60:12-23.

In contrast, in its response to the plaintiff's second set of interrogatories, Johnco stated, in part, "plaintiff has not been in operation during the year 2007 in the same

2

manner as prior to the defendant's material breach…" Plaintiff's Answers to Defendant's Second Set of Interrogatories, ¶12, served on or about October 2, 2007. Johnco is apparently taking the position that producing and selling No. 57 gravel is completely unrelated to producing and selling No. 67 gravel. Mr. Johnston testified otherwise.

No. 57 gravel is comprised of somewhat larger rocks than No. 67 gravel, but it also includes No. 67 gravel. Ben Johnston Transcript 60:3-11. In other words, No. 57 gravel contains No. 67 gravel plus "some big stuff added on top of it," to use Mr. Johnston's description. Ben Johnston Transcript 60:3-11. Additionally, Mr. Clatus Junkin, current owner of Johnco, testified the process of producing No. 57 gravel utilized by Johnco required that "all of the 67 will go into the 57". Clatus Junkin Transcript 72:15-22. Therefore, Johnco's production and sale of No. 57 gravel is in place of the production and sale of No. 67 gravel. Mr. Junkin further testified, "Dunn, I don't have any problem telling you who Dunn is. Dunn is someone over in Mississippi that we possibly could maybe work out an agreement to supply material to." Clatus Junkin Transcript 187:8-13.[1]

On or about December 3, 2007, CYDI served on Johnco a Notice of Production from Non-Party along with a subpoena to Dunn. The subpoena to Dunn (the "Subpoena") requested copies of

> all documents relevant to the following topics…Johnco's relationship with Dunn Construction Company, including but not limited to, any and all negotiations between Johnco and Dunn regarding the purchase and sale of sand and/or gravel from Johnco.

---

[1] Johnco asserts that CDYI is somehow improperly using information disclosed by Johnco in settlement discussions. While it is true that Johnco attempted to use it's "imminent" deal with Dunn to pump up the value of settlement, the negotiations with Dunn were disclosed without objection, and quite openly, in July, 2007 at the depositions of both Mr. Johnston and Mr. Junkin. CDYI does not concede, however, that information learned in settlement negotiations cannot be verified through the discovery process.

3

{034542-058 : KWEST/KWEST : 00540284.DOC; 1}

On December 7, 2007, Johnco filed its first Motion to Quash the Subpoena (Dkt. No. 50), which was denied by the Court on December 11, 2007, for its failure to comply with Fed.R.Civ.P. 26(c) and 37(a)(2)(B) and paragraph 5 of the General Order of this Court entered on November 22, 1993.    On December 13, 2007, Johnco filed its Amended Motion to Quash Civil Subpoena (Dkt. No. 52, the "Motion") pursuant to Fed.R.Civ.P. 45(c)(3)[2] on the following grounds: "1) the information sought is not reasonably calculated to lead to the discovery of [sic] evidence upon trial of this matter; 2) production as sought by the subpoena will subject the non-party to an undue burden; and (3) production as sought by the subpoena would result in disclosure of a trade secret or other confidential research, development, or commercial information." Motion ¶4.

## I.    Johnco has no Standing to Object to the Subpoena.

Ordinarily a party to a lawsuit does not have standing to seek to quash a subpoena issued to a third-party, unless the objecting party claims some personal right or privilege with regard to the documents sought.  See, e.g., 9A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure §2459 (2d ed. 1994); *Maxwell v. Health Center of Lake City, Inc.*, 2007 WL 1627020 *2 (M.D. Fla. 2007).  This personal right or privilege must be asserted timely and with specificity.  See, e.g., *Manufacturer Direct, LLC, v. Direct Buy, LLC*, 2007 WL 496382 *2 (N.D. Ind. 2007).  This personal right or privilege of a party has been found to exist sufficient to confer standing upon a party to object to a subpoena in only a few instances including the following:

---

[2]    As Johnco has not asserted any grounds for quashing the subpoena pursuant to Rule 26, there is no need to determine whether Rule 26 permits Johnco's motion or, if so, the merits of any such claims.

4

- financial information subpoenaed from a bank (see, e.g., *Schmuulovich v. 1161 Route 9*, 2007 WL 2362598 (D.C. N.J. 2007)); and

- employee personnel files (see, e.g., *Richards v. Convergys, Inc.*, 2007 WL 474012 (D. Utah 2007)).

The Motion neither mentions nor asserts any right or privilege of Johnco with regard to the documents sought by the Subpoena. The closest that Johnco gets to asserting any right in the documents sought by the Subpoena is a claim that "disclosure of the information sought would throw a chilling effect over [Johnco's] ongoing and current negotiations with Dunn...." Motion ¶26. This is not a personal right or privilege claim in the documents sought by the Subpoena and is insufficient to give Johnco standing to bring the Motion.

Accordingly, the Motion should be denied based on Johnco's lack of standing.

## II.    The Subpoena is Reasonably Calculated to Lead to the Discovery of Admissible Information.

Johnco argues that the subpoena to Dunn must be quashed because the information it seeks is "in no way related to the allegations of the Complaint of Johnco, or the defenses or counterclaim asserted by CYDI in its Answer." Motion ¶5. This is incorrect.

Rule 26(b)(1) provides generally:

Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party ... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed.R.Civ.P. 26(b)(1). The Federal Rules of Evidence define relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence

to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401.

Subpoenas, like all discovery, are limited to relevant information. See, e.g., *Syposs v. United States*, 181 F.R.D. 224, 226 (W.D. N.Y. 1998) ("[t]he reach of a subpoena issued pursuant to Fed.R.Civ.P. 45 is subject to the general relevancy standard applicable to discovery under Fed.R.Civ.P. 26(b)(1).").

Johnco claims to have incurred in excess of $8 million in damages, because CYDI failed to purchase No. 67 gravel from it. To the extent that Johnco has made any sales of No. 57 gravel, which is comprised of No. 67 gravel, Johnco's claimed $8 million of damages are offset, or mitigated, by the proceeds of any such sales. Further, to the extent that Johnco has the ability to sell No. 57 gravel, but refuses to do so, it has failed to mitigate its damages, as alleged in CYDI's second affirmative defense.

The Subpoena seeks information from Dunn that directly relates to Johnco's ability to produce No. 67 gravel, and thereby the counterclaim, and will tend to demonstrate that it is less likely that Johnco has suffered the more than $8 million of claimed damages and more likely that Johnco has failed to mitigate its damages, as asserted by CYDI in its second affirmative defense. Accordingly, the Subpoena is permitted by Fed.R.Civ.P. 26 and should not be quashed on the grounds that it seeks irrelevant material.

**III.    Johnco has Failed to Meet Its Burden of Establishing that the Subpoena is Unduly Burdensome to Dunn or Seeks Dunn's Confidential and Proprietary Information.**

Johnco asserts the Subpoena is unduly burdensome to Dunn and seeks confidential business information. Motion ¶¶18-20, 26.

6

Rule 45(c)(3)(A) states that on timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it … subjects a person to undue burden. Fed.R.Civ.P. 45(c)(3)(A)(iv).   Additionally, Rule 45(c)(3)(B) authorizes a court to 1) quash or modify[3] a subpoena if it requires disclosure of a trade secret or other confidential research, development, or commercial information; or 2) order production of the requested information upon specified conditions, after first determining that the party in whose behalf the subpoena is issued has shown a substantial need for the testimony or material that cannot be otherwise met without undue hardship and that the person to whom the subpoena is addressed will be reasonably compensated.

When a request for discovery is challenged, the onus is on the party resisting discovery to demonstrate specifically how the request is unreasonable or otherwise overly burdensome.  *Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1559 (11th Cir. 1985).  The burden of proof in demonstrating that compliance with the Subpoena presents an undue burden lies with the moving party and thus, falls upon Johnco in this case.  See, e.g., *Fadalla v. Life Automotive Products, Inc.*, 2007 WL 423350 *2 (M.D. Fla. 2007). Paragraphs 18-20 of the Motion address Johnco's argument that the Subpoena imposes an undue burden on Dunn.

Johnco baldly asserts that the "overbreadth and vagueness" of the Subpoena causes an undue burden on Dunn to determine which documents comply with the request. Motion ¶¶18-20.  Johnco's conclusory allegations fail to provide any details necessary to make a determination that the Subpoena would cause an undue burden on Dunn, such as the number of responsive documents, if any, Dunn has or the number of hours of review

---

[3]    Generally, modification of a subpoena is preferable to quashing it outright.  *Wiwa v. Royal Dutch Petroleum Co.*, 392 F2d 812, 818 (5th Cir. 2004).

7

that would be required to produce the information. See *Fadalla*, 2007 WL 423350 at *2. The mere conclusory recitation of burdensomeness is not sufficiently specific to justify quashing a subpoena or other discovery request. See id; *Panola Land Buyers' Ass'n v. Shuman*, 762 F.2d 1550, 1559 (11th Cir. 1985). Accordingly, the Court should find that Johnco has failed to meet its burden to establish that responding to the Subpoena would cause on undue burden on Dunn.

Johnco also argues that "the negotiations between Johnco and Dunn for the sale of No. 57 gravel are sensitive and confidential." Motion ¶26. As previously discussed, Mr. Johnston informed CYDI of Johnco's dealings with Dunn without objection by Johnco. Accordingly, Johnco has arguably waived its right to raise this objection on its own behalf.

Nevertheless, the Subpoena is narrowly tailored to gather from Dunn information related to its dealings with Johnco. If, for example, Johnco has offered to sell No. 57 gravel, which includes No. 67 gravel, to Dunn for a price higher than that set forth in the Supply Agreement then CYDI is entitled to this information as it goes to Johnco's ability or attempts to mitigate its damages. Similarly, if Johnco has offered to sell No. 57 gravel to Dunn for a price lower than that set forth in the Supply Agreement, then CYDI is entitled to this relevant information. If Johnco has written a letter to Dunn negotiating the terms of a written contract but advising that it cannot sign the contract until after this litigation is terminated, then that letter is relevant and CYDI is entitled to review it. By filing this litigation and claiming in excess of $8 million in damages due to, in part, the inability to sell No. 67 gravel to CYDI or any other buyer, Johnco has opened the door to

8

reasonable inquiry into its efforts, if any, to sell No. 67 gravel (either as No. 67 gravel or as a component of No. 57 gravel) to any purchaser.

This information is vital to CYDI's defenses in this matter. CYDI has attempted to derive this type of information in its written discovery requests. In its second request for production of documents, CYDI requested copies of the following documents:

> 4.    Any and all records that evidence, relate or otherwise pertain to the sale, storage or disposal of the byproduct, or No. 67 gravel, to any business entity, group or individual other than Conrad Yelvington by Johnco.

> 5.    Any and all records that evidence, relate or otherwise pertain to the sale, storage or disposal of any products and/or resources, other than No. 67 gravel or byproducts, to any business entity, group or individual other than Conrad Yelvington by Johnco.

Johnco produced no documents reflecting any transactions or dealings with Dunn in response to either request for production. Upon first learning of Johnco's ongoing relationship with Dunn in Mr. Johnston's deposition, Johnco attempted to gather additional information from Mr. Johnston, but he was unable to provide any further details. Specifically, Mr. Johnston was unable to advise whether there was a contract in place between Dunn and Johnco or how much gravel Dunn intended to purchase annually from Johnco. Ben Johnston Transcript 60:12-23.

On November 30, 2007, three days before serving notice of the Subpoena, CYDI hand delivered to Johnco a notice of taking deposition duces tecum of the corporate representative of Johnco with knowledge of, inter alia, the following:

> Johnco's relationship with Dunn Construction Company, including but not limited to, any and all negotiations between Johnco and Dunn Construction Company regarding the purchase and sale of sand and/or gravel from Johnco.

9

Until yesterday, this deposition was tentatively set for December 21, 2007, in order to comply with the December 31, 2007, discovery deadline. Johnco claims to have recently expended in excess of $1 million to meet whatever obligations it expects it will have to Dunn, and is currently changing from a wet mining operation in favor of a dry mining operation. The deposition of a Johnco representative with the most knowledge of the current status of Johnco's relationship with Dunn is necessary for CYDI to properly defend itself and to properly prosecute its counterclaim. There will be insufficient time after that deposition to serve a subpoena upon Dunn to obtain any information that CYDI is unable to obtain from Johnco at that deposition. Further, CYDI has no way of determining whether, after this deposition, it has complete and accurate information regarding Johnco's relationship with Dunn.

In summary, CYDI has made reasonable effort to obtain the information requested from Dunn from other sources, including Johnco. Additionally, CYDI has demonstrated a substantial need for the requested documents that cannot be otherwise met without undue hardship.

<u>Conclusion</u>

CYDI has established that Johnco does not have standing to make the arguments set forth in the Motion; that the Subpoena is reasonably calculated to lead to the discovery of admissible evidence; that Johnco has failed to meet its burden of establishing that the Subpoena would impose an undue burden on Dunn; and that Johnco has failed to meet its burden of establishing that the Subpoena seeks confidential or proprietary information and/or Johnco has waived this objection. To the extent the Court determines that the Subpoena does seek confidential or proprietary information, CYDI

10

has shown a substantial need for the testimony or material that cannot be otherwise met without undue hardship.

WHEREFORE, CYDI respectfully requests that this Court deny the Amended Motion to Quash Civil Subpoena.

*COBB & COLE*

/s/Thomas J. Leek
THOMAS J. LEEK
FLA. BAR NO. 0116408
150 Magnolia Avenue
Post Office Box 2491
Daytona Beach, FL 32115-2491
Telephone:  (386) 255-8171
Facsimile:  (386) 323-9255
E-mail: Tom.Leek@CobbCole.com
CO-COUNSEL FOR DEFENDANT

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 18th day of December, 2007, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following CM/ECF participants and served by U.S .Mail, a copy of the foregoing on the following non-CM/ECF participants.

H. Gregory Pearson, Esquire
Charles E. Harrison, Esquire
Junkin, Pearson, Harrison, & Junkin, L.L.C.
601 Greensboro Avenue
Suite 600, Alston Place
Tuscaloosa, AL 35401

J. David Martin, Esquire
Copeland, Franco, Screws & Gill, P.A.
444 South Perry Street (36104)
Post Office Box 347
Montgomery, AL  36101

/s/Thomas J. Leek
Attorney

11

# FREEDOM COURT REPORTING

1     IN THE UNITED STATES DISTRICT COURT

2     FOR THE MIDDLE DISTRICT OF ALABAMA

3     CASE NUMBER

4     CV-06-2:06CV993-10

5

6     JOHNCO MATERIALS, INC.,

7     PLAINTIFF,

8     VS.         ORIGINAL

9     CONRAD YELVINGTON

10    DISTRIBUTORS, INC.,     **EXHIBIT**

11    DEFENDANT.       A

12

13    DEPOSITION OF:

14    JAMES BENJAMIN JOHNSTON

15

16    S T I P U L A T I O N

17    IT IS STIPULATED AND AGREED by and

18  between the parties through their

19  respective counsel, that the deposition of

20  JAMES BENJAMIN JOHNSTON, may be taken

21  before Donna Winters, Commissioner and

22  Notary Public, State of Alabama at Large,

23  at the law offices of Junkin, Pearson,

# FREEDOM COURT REPORTING

Page 2

1  Harrison & Junkin, 600 Greensboro Avenue,

2  Suite 601, Tuscaloosa, Alabama 35401, on

3  the 24th day of July 2007 commencing at

4  2:30 p.m.

5  DEPOSITION OF:  JAMES BENJAMIN JOHNSTON

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

# FREEDOM COURT REPORTING

Page 3

1    IT IS FURTHER STIPULATED AND AGREED

2  that the signature to and the reading of

3  the deposition by the witness is reserved,

4  the deposition to have the same force and

5  effect as if full compliance had been had

6  with all laws and rules of Court relating

7  to the taking of depositions.

8    IT IS FURTHER STIPULATED AND AGREED

9  that it shall not be necessary for any

10  objections to be made by counsel as to any

11  questions, except as to form or leading

12  questions, and that counsel for the

13  parties may make objections and assign

14  grounds at the time of the trial, or at

15  the time said deposition is offered in

16  evidence or prior thereto.

17    IT IS FURTHER STIPULATED AND AGREED

18  that notice of filing of this deposition

19  by the Commissioner is waived.

20

21

22

23

# FREEDOM COURT REPORTING

1  the time since then.

2  Q.    Do you have any degrees or

3  certifications that relate to the sand and

4  gravel mining business?

5  A.    Nothing other than I have a degree,

6  a B.S. in mechanical engineering.

7  Q.    Are you employed now?

8  A.    Yes, sir.

9  Q.    Where are you employed?

10  A.    Johnco Materials.

11  Q.    What do you do for Johnco Materials?

12  A.    I'm general manager at the plant.

13  Q.    Is Johnco Materials still operating?

14  A.    Yes, sir.

15  Q.    Is it still taking gravel out of

16  ground?

17  A.    Yes, sir.

18  Q.    Well, what are the product mixes

19  that Johnco is taking out of the ground

20  now?

21  A.    Well, we're taking sand and gravel.

22  Right now we're producing 57 gravel.

23  Well, overall the gravel is about 45

# FREEDOM COURT REPORTING

Page 14

1  percent, and sand would be about 55

2  percent.  97 percent, I believe, of the

3  gravel that is coming out is number 57

4  gravel, and the other 3 percent is an

5  oversize product.

6  Q.    Can you tell me what the uses are

7  for 57 gravel, what you understand them to

8  be?

9  A.    Well, it can be used in ready-mix

10  concrete, or it could be crushed for

11  asphalt.

12  Q.    Anything else?

13  A.    Well, people buy small amounts of it

14  to put on a driveway or something.

15  Q.    Are you familiar with number 67

16  gravel?

17  A.    Yes, sir.

18  Q.    What are the uses for number 67

19  gravel, that you know of?

20  A.    I don't know if it can be crushed

21  for asphalt, but it could definitely be

22  used in ready-mix concrete.

23  Q.    Is Johnco selling number 57 gravel

# FREEDOM COURT REPORTING

Page 15

1  to anyone right now?

2  A.    We're in the process of furnishing a

3  substantial -- not a substantial amount --

4  to somebody to make sure it will work for

5  crushing for asphalt.

6  Q.    Is the answer to my question "yes,"

7  you're selling it now, or you intend to

8  sell it in the future?

9  A.    We have some loaded on train cars

10  waiting to be shipped out.

11  Q.    To whom is that being shipped?

12  A.    I think it's Dunn Construction

13  Company.

14  Q.    Where are they located?

15  A.    In Mississippi.

16  Q.    Do you know what purpose they intend

17  to use that for?

18  A.    They intend to crush it for asphalt.

19  That's my understanding.

20  Q.    Have you sold any number 57 gravel

21  since October of 2006 to any person

22  intending to use it for ready-mix

23  concrete?

# FREEDOM COURT REPORTING

Page 60

1  each number 67; right?

2  A.     Yes, sir.

3  Q.     And number 57 is larger than number

4  67; correct?

5  A.     Correct.

6  Q.     So number 67 mix would be used in

7  the number 57 product; correct?

8  A.     Essentially 57 can be 67 with some

9  big stuff added on top of it.

10  Q.     So 67 plus some big stuff?

11  A.     Yes, sir.

12  Q.     Now that makes sense to me.  I

13  understand that better now.  Is there a

14  contract with Dunn to purchase the 57?

15  A.     I don't know, sir.

16  Q.     You haven't seen one if there is; is

17  that correct?

18  A.     No, sir.  I wouldn't be privy to

19  that.

20  Q.     Do you have any understanding of how

21  much number 57 Dunn intends to purchase on

22  an annual basis?

23  A.     No, sir.

# FREEDOM COURT REPORTING

1    IN THE UNITED STATES DISTRICT COURT

2    FOR THE MIDDLE DISTRICT OF ALABAMA

3    CASE NUMBER

4    CV-06-2:06CV993-10

5

6    JOHNCO MATERIALS, INC.,

7          PLAINTIFF,

8    VS.

9    CONRAD YELVINGTON

10   DISTRIBUTORS, INC.,

11         DEFENDANT.

12

ORIGINAL

**EXHIBIT**
B

13

14       DEPOSITION OF:

         CLATUS JUNKIN

15

16      S T I P U L A T I O N

17    IT IS STIPULATED AND AGREED by and

18  between the parties through their

19  respective counsel, that the deposition of

20  CLATUS JUNKIN, may be taken before Donna

21  Winters, Commissioner and Notary Public,

22  State of Alabama at Large, at Freedom

23  Court Reporting, 367 Valley Avenue,

## FREEDOM COURT REPORTING



Page 2

1  Birmingham, Alabama 35209, on the 25th day

2  of July 2007 commencing at 10:00 a.m.

3  DEPOSITION OF:   CLATUS JUNKIN

## FREEDOM COURT REPORTING

Page 3

1    IT IS FURTHER STIPULATED AND AGREED

2  that the signature to and the reading of

3  the deposition by the witness is reserved,

4  the deposition to have the same force and

5  effect as if full compliance had been had

6  with all laws and rules of Court relating

7  to the taking of depositions.

8    IT IS FURTHER STIPULATED AND AGREED

9  that it shall not be necessary for any

10  objections to be made by counsel as to any

11  questions, except as to form or leading

12  questions, and that counsel for the

13  parties may make objections and assign

14  grounds at the time of the trial, or at

15  the time said deposition is offered in

16  evidence or prior thereto.

17    IT IS FURTHER STIPULATED AND AGREED

18  that notice of filing of this deposition

19  by the Commissioner is waived.

20

21

22

23

## FREEDOM COURT REPORTING

Page 72

1  understand it and if you agree with it.

2  He said specifically as to number 67, as I

3  understand it, number 67 gravel is

4  actually a sub set of number 57 gravel; is

5  that correct?  57 is a little larger; 67

6  is a little smaller.  So the 67 material

7  goes into making 57.  Is that accurate?

8  A.     Well, that wouldn't be the way you

9  put it.  When you're talking about making

10 gravel, you don't relate one size to the

11 other.  You make 57, and it has certain

12 sizes; and then you make 67, and it has

13 certain sizes.  Then you have number 4 and

14 7, et cetera.

15 Q.     Sure.  But the size of 67 is the

16 same size as using 57, with the exception

17 of 57 can have larger pieces; correct?

18 A.     Yes.  Put it this way.  If you're

19 making 67, you'll have some oversize.  If

20 you're making 57, very little oversize.

21 So all the 67 will go into the 57.  Is

22 that the way you understand it?

23 Q.     That's the way I understand it.  I'm

## FREEDOM COURT REPORTING

Page 187

1  to about selling Johnco?

2  A.    Well, of course, we had the Rinker

3  situation.  This guy that Ben was talking

4  about yesterday, I think his name was

5  Cornelius, that bought some of the gravel

6  that we had left over, he at one time

7  called.

8  Q.    Is that Dunn?

9  A.    No.  Dunn, I don't have any problem

10 telling you who Dunn is.  Dunn is someone

11 over in Mississippi that we possibly could

12 maybe work out an agreement to supply

13 material to.

14 Q.    Who is Cornelius with?

15 A.    He is his own.  He's with a family

16 operation that may have had a "B" in it.

17 Q.    B&H, or something like that?  I'm

18 trying to remember the ones that Ben said.

19 A.    May have been.  But I don't really

20 think that was serious.

21 Q.    Anyone else?

22 A.    Not that I would consider able to

23 buy it.