**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA**

| | | |
|---|---|---|
| **JOHNCO MATERIALS, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No.** |
| **vs.** | ) | **2:06cv993-ID** |
| | ) | |
| **CONRAD YELVINGTON** | ) | |
| **DISTRIBUTORS, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL**</u>

Comes now Johnco Materials, Inc. ("Johnco"), the plaintiff in the above-styled cause, and pursuant to Order of this Court [Doc. 56], respectfully opposes the motion of the defendant Conrad Yelvington Distributors, Inc. ("CYDI") to compel the taking of depositions of certain non-parties, beyond the time permitted by the Court's scheduling order.[1]

---

[1] This Court granted that portion of CYDI's motion seeking an enlargement of time, to the extent that CYDI may depose the Rule 30(b)(6) representative of Johnco on or before January 15, 2008 [Doc. 56]. Johnco interprets the Court's order as requesting response by plaintiff pertaining to the depositions of non-parties sought by CYDI, rather than the Rule 30(b)(6) deposition.

The plaintiff would show that this Court has, based on the planning meeting of the parties and the report following that meeting, imposed a discovery cutoff of December 31, 2007:

> All discovery shall be completed on or before December 31, 2007, except that, as to any witnesses whose names are not revealed until the last day allowed under SECTION 9 or whose names are not revealed with sufficient time for the other parties to take a deposition prior to the pretrial conference, the opposing party shall have the time extended in this paragraph to allow for deposing such witness.[2]

[Doc. 15, p. 2]. The plaintiff would show that the information sought by the defendant by its own admission has been known to the defendant since July 2007, and that only now deep in the shadow of the discovery cutoff has the defendant begun to seek deposition testimony and document production from non-parties pertaining to these issues. Entirely aside from

---

[2]Section 9 pertains to the disclosure of witnesses a party expects to call to testify at trial.

the lack of relevance of the information sought by the defendant, the defendant's dilatory conduct does not entitle it now to seek this Court's indulgence in the way of an enlargement of time or order compelling deposition of non-parties. In any event, the Court has now permitted the defendant to seek the information by way of plaintiff's Rule 30(b)(6) deposition, and such deposition is sufficient to permit the defendant to explore the information sought without involving non-parties beyond the discovery cut-off.

## **Background**

CYDI is a distributor of construction materials, including crushed stone, aggregate, sand, and gravel. On April 16, 2004, CYDI and Johnco entered into a contract ("Supply Agreement") for Johnco to construct and operate a mining facility to supply CYDI with No. 67 gravel, 3/4" to 3/8" in size. CYDI sought to ensure a supply of No. 67 gravel to re-sell to customers for use in ready-mix concrete.

The Supply Agreement called for CYDI to take a regular weekly shipments of 5,200 tons per week and a requirement to take minimum of 150,000 tons of No. 67 gravel per year after Johnco began production. The Supply Agreement gave CYDI a right of first refusal on all No. 67 gravel actually produced by Johnco above the 150,000 tons annual minimum.

Johnco, utilizing a dredge operation, began to produce No. 67 gravel by fall 2005. It became fully operational by February 2006, capable of producing 300,000 tons of No. 67 annually. Despite Johnco commencement of mining and production of No. 67 gravel in February 2006, CYDI did not order its first train load of No. 67 gravel until May 11, 2006. Including the initial load on May 11, 2006, CYDI — despite Johnco's attempts to have CYDI take its production — ordered only five-and-a half trainloads of No. 67 gravel, amounting to a total of only 32,000 tons of gravel, in the first nine months of production.

4

On October 19, 2006, Johnco notified CYDI that CYDI was in breach of the Supply Agreement.

Johnco then ceased mining operations in November 2006 until March or April 2007, when it began constructing new "dry" production facilities to produce No. 57 gravel — a larger grade of gravel used in asphalt paving. Johnco did not produce No. 67 gravel after the November 2006 shut down.

In and around March or April 2007 Johnco began negotiating with Dunn Construction Company, Inc. ("Dunn") for the production and sale of No. 57 gravel for asphalt paving. Dunn is a construction business in Birmingham, Alabama, and is a potential competitor of CYDI. At no time before the spring of 2007, which was long after CYDI's breach of the Supply Agreement, did Johnco have any communications or contact with Dunn regarding the sale of any product.

As defendant admits in its motion [Doc. 55, p.2], defendant became aware of Johnco's negotiations with Dunn in July 2007, when Johnco's owner, Clatus Junkin, testified to the fact of those negotiations in his deposition.

Notwithstanding defendant's knowledge in July 2007 of the existence of the negotiations with Dunn, defendant did not undertake until November 30, 2007 to seek any discovery as to this issue.  On that date [*see* Doc. 55, p. 3], defendant's counsel served by hand delivery on counsel for Johnco a Notice of Taking 30(b)(5) and (6) Deposition ("Notice"). Said Notice sought testimony from a corporate representative to be designated by Johnco under Fed.R.Civ.P. 30(b)(6) and documents produced under Fed.R.Civ.P. 30(b)(5) as to the relationship and negotiations with Dunn.

On December 3, 2007, CYDI also for the first time gave notice of intent under FED.R.CIV.P. 45 for issuance of Subpoena In A Civil Case to

6

Dunn, seeking deposition testimony and production of documents from Dunn relating to its relationship with Johnco and negotiations with Johnco.

Johnco objected to the notice of the Rule 30(b)(6) deposition, and further filed a motion to quash the subpoena to Dunn [Doc. 50].[3] Notwithstanding the objection, Johnco offered to permit deposition of Johnco's Rule 30(b)(6) representative on December 20, 2007 and/or December 21, 2007, at a time when counsel had planned to convene in Montgomery, Alabama for depositions of other persons,[4] and within this Court's permitted discovery period [*see* Doc. 55, pp.4, 8]. While stating to counsel for Johnco that it anticipated a two-hour deposition, counsel for CYDI admits that it declined to take the Rule 30(b)(6) deposition of

---

[3]Johnco's motion to quash was summarily denied by this Court [Doc. 51] due to Johnco's failure to certify its efforts to resolve the matters of the motion with opposing counsel. Johnco cured this defect and subsequently filed an amended motion to quash [Doc. 52] containing the certification.

[4]On December 20, 2007, Johnco's counsel deposed CYDI chief financial officer Mark Klebe and designated expert witness Eugene Hartley in Montgomery. On December 21, 2007, Johnco's counsel deposed designated expert witness David Borden.

Johnco it had requested and noticed at this time, citing "insufficient time"
[*see* Doc. 55, p. 9].


**I.    CYDI'S MOTION TO COMPEL SHOULD BE
DENIED BECAUSE CYDI IS DILATORY IN
SEEKING THE DISCOVERY.**


The motion to compel discovery by way of document production and
deposition from non-parties should be denied because CYDI has failed to
take advantage of the time allowed it for discovery to inquire into the
matters for which it now seeks an extension of time.


This Court on January 12, 2007 imposed a discovery cutoff of
almost a year, till December 31, 2007. Party depositions were taken in July
2007. At this time, CYDI by its own admission discovered that Johnco
was engaged in business negotiations with Dunn. Despite this discovery,
and despite the fact that the parties have continued to take depositions and
engage in voluminous discovery in other aspects of this case, CYDI waited

until November 30, 2007 to begin seeking information related to the Dunn transaction.

By its own terms, the Uniform Scheduling Order is binding on the parties, who did not object to its terms. The Order has not been modified by subsequent Order of the Court, nor had the parties requested modification prior to the defendant's motion to enlarge time and to compel.

CYDI waited five months – half the discovery period – after it learned of the existence of the Dunn relationship and negotiations to begin seeking further discovery. It could have sought this information far earlier and in time for the Court to resolve any disputes as to the relevance of the information sought. CYDI may not sit on its hands, as it were, for five months and now come in at the last minute to seek the indulgence of the Court, to seek the involvement of non-parties.

## II.   CYDI'S MOTION TO COMPEL SHOULD BE DENIED BECAUSE THE DISCOVERY IT SEEKS IS NOT REASONABLY CALCULATED TO LEAD TO THE DISCOVERY OF ADMISSIBLE EVIDENCE.

The motion to compel should also be denied because CYDI seeks information that is not reasonably calculated to lead to the discovery of admissible evidence.   Johnco in this regard adopts and incorporates the arguments and statements in its Amended Motion to Quash [Doc. 52].

CYDI is seeking deposition testimony and the following "documents relevant to the following topics":

> **Johnco's relationship with Dunn Construction Company, including but not limited to, any and all negotiations between Johnco and Dunn regarding the purchase and sale of sand and/or gravel from Johnco.**

As previously stated, Johnco objected to the issuance of the subpoena because the information sought is not reasonably calculated to

10

lead to the discovery of evidence upon trial of this matter, and because it seeks to pry into and cause disclosure of sensitive commercial information.

CYDI seeks through the deposition notice and subpoena to Dunn to discover information relating to Johnco's current negotiations to sell No. 57 gravel to Dunn, a potential competitor to CYDI. The information sought by way of the subpoena is completely unrelated to the allegations of the complaint of Johnco, or the defenses or counterclaim asserted by CYDI in its answer. It is rather an improper attempt by CYDI to use information obtained primarily by CYDI during settlement negotiations of this case in order to pry into confidential information and create unfair leverage.

Through the latter half of 2007, Johnco and CYDI have engaged in informal discussions relating to possible settlement of this litigation. On October 31, 2007, the parties by and through counsel informed this Court as follows:

1.    That counsel for all parties, together with principals of all parties, conducted a face-to-face settlement conference at the offices of counsel for the plaintiff in Tuscaloosa, Alabama, on Monday, October 29, 2007, at which counsel and parties engaged in good-faith settlement negotiations.

2.    That settlement was not reached at such settlement conference, but that counsel and parties are encouraged by the progress made at the conference.

3.    That counsel and parties feel that Monday's conference resulted in discussion of a number of options which the parties can explore and structure a possible future settlement, and that counsel and parties are committed to pursuing due diligence and a course of negotiation to see if settlement can be reached.

During and in the furtherance of these settlement discussions, Johnco in good faith provided CYDI with information regarding the current and ongoing negotiations between Dunn and Johnco regarding production and sale of No. 57 gravel.

The information CYDI seeks by way of the deposition notice and subpoena to Dunn is not relevant to the dispute between CYDI and Johnco.

12

Nor will the information, if produced, be calculated to lead to the discovery of evidence which will be admissible upon trial of this cause.

A party is entitled to discovery only to the extent that the discovery is reasonably calculated to lead to the discovery of admissible evidence. Fed.R.Civ.P. 26; Degen v. U.S., 517 U.S. 820, 135 L.Ed.2d 102, 116 S. Ct. 1777, 64 U.S.L.W. 4413 (U.S. 1996). Such is not the case here. The negotiations toward any agreement with Dunn are not material or relevant to the Supply Agreement or CYDI's breach of that Agreement.

CYDI claims that the requested information is relevant to an inquiry into Johnco's mitigation of its damages. This is simply not the case. The Supply Agreement with CYDI was solely to supply No. 67 gravel for use in ready-mix concrete. CYDI breached the Supply Agreement by October 2006, resulting in Johnco shutting down its dredging operation ("wet" operation) for No. 67 gravel in November 2006.

13

The negotiations with Dunn, on the other hand, relate to a "dry" mining operation from a different pit (quite apart from the "wet" operation of the dredge in the original pit), for production of No. 57 gravel, an entirely different grade of gravel used in asphalt paving. These negotiations occurred no earlier than spring 2007, long after CYDI's breach. The gravel to be produced is used in asphalt, a use wholly separate from ready-mix concrete. The production of one is, contrary to the assertions of CYDI, completely unrelated to the other. Johnco could have produced sufficient No. 67 gravel from its existing "wet" dredging operation to supply CYDI, while producing No. 57 gravel from a new "dry" mining operation for other sources.

Thus, the information relating to the Dunn negotiations and any relationship between Johnco and Dunn is wholly immaterial to the issues presented in this litigation. Johnco was obligated only to produce No. 67 gravel for CYDI, and CYDI was obligated to take only No. 67 gravel. Johnco's production of No. 57 gravel — a production which necessitated

14

the building of new facilities to mine a different pit and produce a different grade of gravel for a different source and for a different purpose — has nothing to do with this litigation.   CYDI simply is not entitled to production of the requested information under Rule 26, whether by deposition or document production.

Moreover, as Johnco has previously argued, CYDI has taken sensitive information which Johnco provided in good faith during settlement negotiations, and is seeking to use that information as the basis for prying into confidential and commercial information of Johnco's dealings with CYDI's competitor Dunn.

Confidential commercial information is information which, if disclosed, would cause substantial economic harm to the competitive position of the entity from whom the information was obtained.  <u>Diamond State Ins. Co. v. Rebel Oil Co.</u>, Inc., 157 F.R.D. 691, 697 (D. Nev.1994). It is that information which, if disclosed, would give a competitor an unfair

advantage.  In re Northwest Airlines Corp., 363 B. R. 704, 706 (Bankr. S.D.N.Y. 2007).

CYDI is by its subpoena intruding into the negotiations between Dunn and Johnco for sale of the No. 57 gravel, thereby dragging Dunn into the middle of this litigation.  The obvious effect of this intrusion is to cause Dunn to reconsider its relationship with Johnco, thereby to hurt Johnco financially and give CYDI an unfair leverage in this litigation.

The negotiations between Johnco and Dunn for the sale of No. 57 gravel are sensitive and confidential.  Disclosure of the terms of the negotiations would give an unfair advantage to CYDI, a potential competitor of Dunn.  The disclosure of the information sought would throw a chilling effect over the ongoing and current negotiations with Dunn.

CYDI cannot be permitted to benefit from the information which Johnco has provided in good faith to CYDI during settlement negotiations. It has demonstrated no entitled to the information, nor entitlement to an enlargement of time to continue exploring this information.

CYDI is not entitled to an order of this Court compelling untimely and irrelevant discovery, particularly from non-parties. Johnco offered to put up its corporate representative for deposition, subject to its objections as to topics of examination, within the discovery period permitted by this Court, and at a time otherwise convenient and available for CYDI counsel. CYDI is certainly not entitled to an award of expenses for filing its motion to compel.

WHEREFORE PREMISES CONSIDERED, Johnco respectfully opposes the motion of CYDI to compel the non-party depositions and production of documents from said non-party for purposes of exploring the Dunn information.

17

Respectfully submitted,


s/ H. Gregory Pearson
H. Gregory Pearson (ASB-4733-S81H)
Attorney For Plaintiff
email: greg@jphj.net


Charles E. Harrison (ASB-9408-N70C)
Attorney For Plaintiff
email: chuck@jphj.net

*OF COUNSEL:*

JUNKIN, PEARSON, HARRISON
    & JUNKIN, L.L.C.
601 Greensboro Avenue
Suite 600 Alston Place
Tuscaloosa, Alabama 35401
Telephone: (205) 366-0111
Telecopier: (205) 391-4780

18

## CERTIFICATE OF SERVICE

Pursuant to FED.R.CIV.P. 5(e) and the Administrative Procedures For Filing, Signing, And Verifying Pleadings and Documents In The District Court Under the Case Management/Electronic Case Files (CM/ECF) System In Civil Cases [General Order No. 2:04-mc-3164], I do hereby certify that I have electronically filed the foregoing Response to Motion for Enlargement of Time And To Compel with the Clerk of the Court by uploading same to the Court's CM/ECF web site at http://www.almd.uscourts.gov, which will send notification of such filing to the following:

> Thomas J. Leek, Esq
> COBB & COLE
> Post Office Box 2491
> Daytona Beach, FL 32115-2491
>
> George Walker III, Esq.
> David Martin, Esq.
> COPELAND, FRANCO, SCREWS
>    & GILL, P.A.
> 444 S. Perry St.
> Montgomery, Alabama 36101-0347

and I hereby certify that I have mailed by United States Postal Service, properly addressed and first-class postage prepaid and affixed this document to the following non-CM/ECF participants:

> [none]

This the 26st day of December 2007.

Charles E. Harrison (ASB-9408-N70C)

19