IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

JOHNCO MATERIALS, INC.,     )
     )
     Plaintiff,     )
     )     Civil Action No.
vs.     )     2:06cv993-ID
     )
CONRAD YELVINGTON     )
DISTRIBUTORS, INC.,     )
     )
     Defendant.     )

## PLAINTIFF'S SUPPLEMENTATION OF PREVIOUSLY FILED REPORT OF EXPERT WITNESSES

Comes now Johnco Materials, Inc., the plaintiff in this cause, and pursuant to FED.R.CIV.P. 26 supplements the previously filed report of its expert witness J. Lester Alexander, III, CPA.

1

Respectfully submitted,


s/ H. Gregory Pearson
H. Gregory Pearson (ASB-4733-S81H)
Attorney For Plaintiff
email: greg@jphj.net


Charles E. Harrison (ASB-9408-N70C)
Attorney For Plaintiff
email: chuck@jphj.net


*OF COUNSEL:*

JUNKIN, PEARSON, HARRISON
    & JUNKIN, L.L.C.
601 Greensboro Avenue
Suite 600 Alston Place
Tuscaloosa, Alabama 35401
Telephone: (205) 366-0111
Telecopier: (205) 391-4780

2

## CERTIFICATE OF SERVICE

Pursuant to FED.R.CIV.P. 5(e) and the Administrative Procedures For Filing, Signing, And Verifying Pleadings and Documents In The District Court Under the Case Management/Electronic Case Files (CM/ECF) System In Civil Cases [General Order No. 2:04-mc-3164], I do hereby certify that I have electronically filed the foregoing Motion to Strike with the Clerk of the Court by uploading same to the Court's CM/ECF web site at http://www.almd.uscourts.gov, which will send notification of such filing to the following:

> Thomas J. Leek, Esq
> COBB & COLE
> 150 Mognolia Avenue
> Post Office Box 2491
> Daytona Beach, FL 32115-2491
>
> George Walker III, Esq.
> David Martin, Esq.
> COPELAND, FRANCO, SCREWS
>   & GILL, P.A.
> 444 S. Perry St.
> Montgomery, Alabama 36101-0347

and I hereby certify that I have mailed by United States Postal Service, properly addressed and first-class postage prepaid and affixed this document to the following non-CM/ECF participants:

> [none]

This the 29th day of February 2007.

Charles E. Harrison (ASB-9408-N70C)

3

**Supplemental Report of Accounting, Economics & Appraisal Group, LLC**

**By:  J. Lester Alexander, III**

**Johnco Materials, Inc. v.
Conrad Yelvington Distributors, Inc.
As of February 29, 2008**

**CV-06-2:06cv993-ID**

This report and the attached appendices is a supplement to my report issued August 8, 2007 that contained my opinions as of that date regarding the amount of lost profits and lost future profits incurred by Johnco Materials, Inc. ("JMI").  Since that time, discovery has continued and new documentary and oral evidence has been presented to me.  I have read and analyzed the new information and have given consideration to information learned as of the date of my previous report. In addition, I have considered the Memorandum Order and Opinion dated February 28, 2008, issued by Judge DeMent in this matter ("the Memorandum Order"), and related motions and briefs filed by the parties.  As a result, my fundamental opinions contained in the August 8, 2007 report remain unchanged.

The following are supplements to my opinions.

*JMI's Suffered Losses as a Result of CYDI's Breach of the Supply Agreement*

True economic losses are lost incremental revenues minus the incremental cost associated with those revenues.[1] For JMI, the true economic losses incurred as a result of the alleged breach of Conrad Yelvington Distributors, Inc. ("CYDI") are the lost incremental revenue from the sales of No. 67 gravel to CYDI under the Supply Agreement, minus the incremental costs associated with those revenues.

Cost accounting principles provide different methods for the allocation of costs for a by-product or a joint product.[2] In light of the Memorandum Order, the alleged lost sales of oversize gravel and sand to third parties constitute activities that are independent of and collateral to the Supply Agreement[3].  Consequently, the application of the joint product costing method is the appropriate cost accounting method for determining the incremental costs associated with lost incremental revenue under the Supply Agreement.[2]

While not considering any lost profits from the sale of oversize gravel and sand, in my opinion it is reasonable to conclude that JMI would have been able to at least recover the cost of the joint products from the existing markets for oversize gravel and sand, which include the concrete, asphalt and other markets. My research indicates that a substantial market exists for both oversize gravel and sand and that JMI's pricing within that market is competitive. Moreover,

---

[1] Gaughan, Patrick A. (2004). Measuring Business Interruption Losses and Other Commercial Damages. Hoboken, New Jersey: John Wiley & Sons.
[2] Arnstein,  William E. and  Frank Gilabert. (1980). Direct Costing. New York, New York: AMACOM a division of The American Management Association.
[3] Memorandum Order and Opinion dated February 28, 2008, issued by Judge DeMent in this matter.

there is insufficient evidence to conclude the JMI would not have been able to access available markets had CYDI not breached the Supply Agreement, which caused the production of joint products (particularly the highly profitable oversize gravel) to stop. JMI's margins on sales of oversize gravel were substantial, and sand was sold at a price that substantially recovered its cost.[4]

JMI's lost profits are $4,110,179, determined in accordance with the Memorandum Order, assuming sales of only No. 67 gravel by JMI to CYDI in quantities of 5,200 tons per week (260,000 tons per year), after discounting to present value[5] and including prejudgment interest.[6]

JMI's lost profits are $2,322,122, determined in accordance with the Memorandum Order, assuming sales of only No. 67 gravel by JMI to CYDI in quantities of 3,000 tons per week (150,000 tons per year), after discounting to present value and including prejudgment interest.

In deriving these amounts I considered the above information, my report dated August 8, 2007 and the following:

> A study of the actual incremental, avoided, fixed and sunk/committed costs of JMI for March 2006 and May 2006 through September 2006.[7] Incremental costs were attributed to production, including production of joint products independent of and collateral to the Supply Agreement, based on an hourly production capacity of 120 tons of No. 67 gravel, 30 tons of oversize gravel and 183 tons of sand. Overtime premium was assessed to production levels greater than 70% of the capacity of a 40 hour shift at 50 shifts per year.

> Lost profits were reduced by the actual sales of No. 67 gravel to CYDI.

> The information contained in the appendices to this report.

### CYDI's Expert Borden's Opinions are Flawed

My opinions contained herein and in my report date August 8, 2007 rebut the opinions of CYDI's expert, Dave Borden. Borden's opinions are incorrect for a variety of reasons. For example, Borden incorrectly deducted from his profit determinations fixed costs, sunk costs and other costs that could not reasonably be avoided. He also failed to make a reasonable allowance for the capacity of the operation; instead he based his determinations on production levels adversely impacted by the alleged breach of CYDI.

Moreover, Borden's methodology of deducting the cost of production of joint products from the sales value of No. 67 gravel is contrary to the holding in the Memorandum Order that sales of

---

[4] JMI incremental costs of production were $1.85 per ton compared to a weighted average sales price per ton of $8.50 and $1.76 for oversize and sand, respectively.
[5] The present value rate is 5.95% based on JMI's bank line of credit agreement and prime rate per the Wall Street Journal as of February 29, 2008.
[6] The prejudgment interest rate is assumed to be 6% and is computed through March 31, 2008.
[7] The base period for projecting avoided costs includes all months studied previously by me plus all months studied by Defendant's expert Borden. In addition to the base period, I studied costs reported by JMI in its general ledger, financial statements and / or income tax returns for 2005, 2006 and 2007.

oversize gravel and sand to third parties constitutes activities that are independent of and collateral to the Supply Agreement.[3]   Consequently, Borden's methodology misstates his determinations to the detriment of JMI. It is an undisputed fact that oversize gravel and sand were produced and sold by JMI. During the limited time of production, JMI demonstrated the ability to sell oversize gravel and sand. Moreover, the ultimate profitability of the oversize gravel and sand is a separate matter with separate customers, separate marketing efforts, and the sales and ultimate profit or loss of the oversize gravel and sand is unrelated to the profit to be earned under JMI's contract to sell No. 67 gravel to CYDI.

## OTHER CONSIDERATIONS

The information in this report is based on information learned through February 29, 2008.  I reserve the right to consider any additional information that is presented to me and supplement or amend my opinions for information learned through trial.


Very truly yours,


By: *J. Lester Alexander, III*

    J. Lester Alexander, III, CPA

**INDEX OF APPENDICES**

Appendix A – Lost Profits at 5,200 Tons per Week (260,000 Tons per year)

Appendix B – Lost Profits at 3,000 Tons per Week (150,000 Tons per year)

Appendix C – Avoided Costs

Appendix D – Fixed, Sunk and Committed Costs

Appendix E –Actual Tons Purchased

Appendix F – Cumulative Tons Purchased

Appendix G – Alabama Market and JMI Market Share

Appendix H – Supplemental Listing of Information Considered

**Lost Profits at 5,200 Tons per Week**
**(260,000 Tons per Year)**

| | | Total | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 |
|---|---|---|---|---|---|---|---|
| Gross revenue [A] | $ | 7,241,300 | $ 1,256,100 | $ 1,469,000 | $ 1,505,400 | $ 1,505,400 | $ 1,505,400 |
| (Less): Cost of deposit in ground [I] $ 0.40 | | (507,200) | (91,200) | (104,000) | (104,000) | (104,000) | (104,000) |
| Lost revenue | | 6,734,100 | 1,164,900 | 1,365,000 | 1,401,400 | 1,401,400 | 1,401,400 |
| Avoided costs [I] | | | | | | | |
| Fuel per ton @ $ 0.64 | | 811,500 | 145,900 | 166,400 | 166,400 | 166,400 | 166,400 |
| Labor $ 0.56 | | 710,100 | 127,700 | 145,600 | 145,600 | 145,600 | 145,600 |
| Other costs per ton @ $ 0.40 | | 507,200 | 91,200 | 104,000 | 104,000 | 104,000 | 104,000 |
| Overtime premium $ 0.28 | | 129,000 | 25,800 | 25,800 | 25,800 | 25,800 | 25,800 |
| Other avoided costs | | 170,000 | 34,000 | 34,000 | 34,000 | 34,000 | 34,000 |
| Inflation-U.S. Dept. of Labor, BLS, South Region, Size D    3.0% | | 197,600 | 6,500 | 22,400 | 38,600 | 55,800 | 74,300 |
| Total avoided costs | | 2,525,400 | 431,100 | 498,200 | 514,400 | 531,600 | 550,100 |
| Total avoided costs per ton | | | $ 1.89 | $ 1.92 | $ 1.98 | $ 2.04 | $ 2.12 |
| Gross damages | | 4,208,700 | 733,800 | 866,800 | 887,000 | 869,800 | 851,300 |
| Present value factor $1/(1+r)^{n-5}$    5.95% | | | - | - | 0.976206 | 0.921383 | 0.869640 |
| Damages, before prejudgment interest | | 4,008,237 | 733,800 | 866,800 | 865,894 | 801,419 | 740,324 |
| Prejudgment interest factor @    6.0% | | | 0.016438% | 0.016438% | 0.016438% | - | - |
| Prejudgment interest days | | | 577 | 212 | 15 | - | - |
| Prejudgment interest | | 101,942 | 69,600 | 30,207 | 2,135 | - | - |
| **Damages** | **$ 4,110,179** | | $ 803,400 | $ 897,007 | $ 868,029 | $ 801,419 | $ 740,324 |

*Sources:*

1 - Appendix C

*Footnotes:*

A - Yelvington's expected purchases less actual purchases times price.

B - Borden's estimate of the cost per ton of deposits in the ground was used as a measure of conservatism.  However, I disagree with Borden's per ton cost calculation

   because his estimate of reserves conflicts with oral and documentary evidence.

Appendix B

## Lost Profits at 3,000 Tons per Week
### (150,000 Tons per Year)

| | | Total | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 |
|---|---|---|---|---|---|---|---|
| Gross revenue [A] | $ | 4,103,000 | $ 650,000 | $ 847,500 | $ 868,500 | $ 868,500 | $ 868,500 |
| (Less): Cost of deposit in ground [B] $ 0.40 | | (287,200) | (47,200) | (60,000) | (60,000) | (60,000) | (60,000) |
| Lost revenue | | 3,815,800 | 602,800 | 787,500 | 808,500 | 808,500 | 808,500 |
| Avoided costs [1] | | | | | | | |
| Fuel per ton @ $ 0.64 | | 459,500 | 75,500 | 96,000 | 96,000 | 96,000 | 96,000 |
| Labor $ 0.56 | | 402,100 | 66,100 | 84,000 | 84,000 | 84,000 | 84,000 |
| Other costs per ton @ $ 0.40 | | 287,200 | 47,200 | 60,000 | 60,000 | 60,000 | 60,000 |
| Overtime premium $ 0.28 | | - | - | - | - | - | - |
| Other avoided costs | | 170,000 | 34,000 | 34,000 | 34,000 | 34,000 | 34,000 |
| Inflation-U.S. Dept. of Labor, BLS, South Region, Size D 3.0% | | 113,500 | 3,400 | 12,900 | 22,200 | 32,200 | 42,800 |
| Total avoided costs | | 1,432,300 | 226,200 | 286,900 | 296,200 | 306,200 | 316,800 |
| Total avoided costs per ton | | | $ 1.92 | $ 1.91 | $ 1.97 | $ 2.04 | $ 2.11 |
| Gross damages | | 2,383,500 | 376,600 | 500,600 | 512,300 | 502,300 | 491,700 |
| Present value factor $1/(1 + r)^{n-5}$ 5.95% | | | - | - | 0.976206 | 0.921383 | 0.869640 |
| Damages, before prejudgment interest | | 2,267,723 | 376,600 | 500,600 | 500,110 | 462,811 | 427,602 |
| Prejudgment interest factor @ 6.0% | | | 0.016438% | 0.016438% | 0.016438% | - | - |
| Prejudgment interest days | | | 577 | 212 | 15 | - | - |
| Prejudgment interest | | 54,399 | 35,720 | 17,446 | 1,233 | - | - |
| **Damages** | | **$ 2,322,122** | $ 412,320 | $ 518,046 | $ 501,343 | $ 462,811 | $ 427,602 |

*Sources:*

1 - Appendix C

*Footnotes:*

A - Yelvington's expected purchases less actual purchases times price.

B - Borden's estimate of the cost per ton of deposits in the ground was used as a measure of conservatism. However, I disagree with Borden's per ton cost calculation because his estimate of reserves conflicts with oral and documentary evidence.

The present value rate is 5.95% based on JMI's bank line of credit agreement and prime rate per the Wall Street Journal as of February 29, 2008.

The prejudgment interest rate is assumed to be 6% and is computed through March 31, 2008.

Appendix C

**Avoided Costs**

| | March | May | June | July | August | September | Total | Annualized | Cost per | Basis |
|---|---|---|---|---|---|---|---|---|---|---|
| Production costs: | | | | | | | | | | |
| Fuel & oil | | | | | | | | | | 39,933 tons [1] |
| | | | | | | | | | | 36% |
| | $ 7,782 | $ 6,700 | $ 18,854 | $ 9,137 | $ 10,078 | $ 18,294 | $70,845 | | $0.64 | 110,925 tons |
| | | | | | | | | | | |
| Labor costs: | | | | | | | | | | |
| Contract labor | $ - | $ - | $ 1,625 | $ - | $ - | $ 550 | | $ 4,350 | | |
| Insurance - WC | | | | | 4,165 | - | | 8,330 | | |
| Payroll taxes | 1,834 | 1,409 | 2,661 | 2,030 | 2,285 | 1,186 | | 22,810 | | |
| Salaries and wages | 16,913 | 18,771 | 23,734 | 18,366 | 21,839 | 13,651 | | 226,548 | | |
| | $18,747 | $20,180 | $ 28,020 | $20,396 | $ 28,289 | $ 15,387 | | $ 262,038 | $0.56 | 466,200 tons |
| Overtime premium | | | | | | | | | $0.28 | 0.5 times |
| | | | | | | | | | | |
| Other costs: | | | | | | | | | | |
| Bank charges | $ - | $ - | $ 384 | $ 299 | $ 717 | $ 1,509 | | $ 5,818 | | |
| Equipment rental | 2,044 | 5,141 | 4,098 | - | 7,780 | 4,019 | | 46,164 | | |
| Hauling charges | - | - | 180 | - | 1,650 | - | | 3,660 | | |
| Miscellaneous expense | 74 | 695 | - | - | - | - | | 1,538 | | |
| Insurance | 1,517 | 2,783 | 1,810 | - | - | - | | 12,220 | | |
| Repairs & maintenance | 8,270 | 1,518 | 5,680 | 3,305 | 6,267 | 12,691 | | 75,462 | | |
| Small tools | 429 | - | 454 | - | 208 | 290 | | 2,762 | | |
| Supplies | 395 | 1,119 | 5,545 | 980 | 854 | 4,559 | | 26,904 | | |
| Training | - | - | 150 | - | - | - | | 300 | | |
| Utilities | 512 | 735 | 1,245 | 1,374 | 1,398 | 1,466 | | 13,460 | | |
| | $13,241 | $11,991 | $ 19,546 | $ 5,958 | $ 18,874 | $ 24,534 | | $ 188,288 | $0.40 | 466,200 tons |
| | | | | | | | | | | |
| Other avoided costs: | | | | | | | | | | |
| Auto expense | $ 4,913 | $ - | $ - | $ - | $ - | $ - | | $ 9,826 | | |
| Cleaning | 125 | - | 100 | - | 75 | 125 | 100 | 1,050 | | |
| Life insurance | 1,657 | - | 1,657 | 1,657 | 1,657 | 1,657 | | 16,570 | | |
| Office expense | 201 | - | 96 | 128 | 1,236 | 247 | | 3,816 | | |
| Travel | 326 | 337 | 277 | - | 146 | 111 | | 2,394 | | |
| Postage | - | - | 78 | - | 78 | 39 | | 390 | | |
| | $ 7,222 | $ 337 | $ 2,208 | $ 1,860 | $ 3,242 | $ 2,154 | | $ 34,046 | | |

*Source:*

See e.g. JOHNCO 0191 and Amended Tax Return

1 - See e.g. JMI Sales Invoices

**Appendix D**

### Fixed, Sunk and Committed Costs

| | | March | May | June | July | August | September | Total | Annualized |
|---|---|---|---|---|---|---|---|---|---|
| **Fixed or not avoided/avoidable:** | | | | | | | | | |
| Dues | | - | - | - | 200 | 215 | - | 415 | 830 |
| Professional fees | | 3,000 | - | 400 | 300 | 800 | 400 | 4,900 | 9,800 |
| Rents | | 400 | 400 | 800 | - | 400 | 400 | 2,400 | 4,800 |
| Taxes and licenses | | 110 | - | - | 826 | - | - | 936 | 1,872 |
| Telephone | | 573 | - | 576 | 232 | 1,220 | 334 | 2,935 | 5,870 |
| | Subtotal | 4,083 | 400 | 1,776 | 1,558 | 2,635 | 1,134 | 11,586 | 23,172 |
| **Sunk/committed costs:** | | | | | | | | | |
| Amortization expense | | - | - | - | - | - | - | - | - |
| Depletion | | - | - | - | - | - | - | - | - |
| Depreciation | | 2,658 | 2,658 | 2,658 | 2,658 | 2,658 | 2,658 | 15,948 | 31,896 |
| Interest | | 7,279 | - | - | - | - | - | 7,279 | 14,558 |
| | Subtotal | 9,937 | 2,658 | 2,658 | 2,658 | 2,658 | 2,658 | 23,227 | 46,454 |
| **Installment debt repayment:** | | | | | | | | | |
| M&B rail spur financing [1] | | - | - | 19,500 | - | - | 19,500 | 39,000 | 78,000 |
| | Subtotal | - | - | 19,500 | - | - | 19,500 | 39,000 | 78,000 |
| | $ | 14,020 | $ 3,058 | $ 23,934 | $ 4,216 | $ 5,293 | $ 23,292 | $ 73,813 | $ 147,626 |

*Source:*

See e.g. JOHNCO 0191 and Amended 2006 Tax Returns

1 - See e.g. M&B Rail Services Agreement

Appendix E



**Appendix F**

Cumulative Tons Purchased
## Actual vs. 5,200 Weekly vs. 150,000 Annually



## Alabama Market and JMI Market Share

|  | State of Alabama [1] | JMI | JMI relative to State of Alabama |
|---|---|---|---|
| Production | 20,100,000 | 466,200 | 2.3% |
| Unit Price | $ 4.78 | $ 3.72 | (1.06) |

*Source:*

1 - U.S. Department of the Interior, U.S. Geological Survey, 2006 Minerals Yearbook,

    Sand and Gravel, Construction, published January 2008.

*Footnote:*

JMI's market share is low and its price is competitive, therefore it is reasonable to conclude that JMI

    could have increased its market share based on its competitive price.

**Supplemental List of Information Considered**                    Appendix H

Expert report of Dave G. Borden, CPA, including supporting documents considered

Deposition and exhibits of Dave Borden (December 21, 2007)

Deposition and exhibits of Clatus Junkin (January 11, 2008)

Invoices for actual sales of No. 67 gravel bearing sales prices ranging from $5.51 per ton to $9.92 per ton

Invoices for actual sales of oversize gravel bearing sales prices ranging from $8.50 per ton to $9.10 per ton

Invoices for actual sales of sand bearing sales prices ranging from $1.30 per ton to $30.00 per ton

Third Party production from:
- West Alabama Bank & Trust
- McCabe and Associates
- M&B Railroad

2006 Amended income tax return of Johnco Materials, Inc.

Arnstein,  William E. and  Frank Gilabert. (1980). *Direct Costing*. New York, New York: AMACOM a division of The American Management Association.

Gaughan, Patrick A. (2004). *Measuring Business Interruption Losses and Other Commercial Damages*. Hoboken, New Jersey: John Wiley & Sons.

Horngren, Charles T. (1977). *Cost Accounting, A Managerial Emphasis*, 4th edition. Englewood Cliffs, New Jersey: Prentice Hall.

Garrison, Ray H. (1979). *Managerial Accounting, Concepts for Planning, Control, Decision Making*, Revised edition. Dallas, Texas: Business Publications

Financial Accounting Standards Board. (2004). Inventory. In *Current Text* (Vol. I, pp. 27519 to 27631). Norwalk, CT: Financial Accounting Standards Board.

Financial Accounting Standards Board. (2004). Accounting Research Bulletin No. 43, Chapter 4, Inventory Pricing. In *Original Pronouncements* (Vol. III, pp. ARB 43-11 to ARB 43-15). Norwalk, CT: Financial Accounting Standards Board.

U.S. Department of the Interior, U.S. Geological Survey, 2006 Minerals Yearbook, Sand and Gravel, Construction, published January 2008.

Wall Street Journal, February 29, 2008.

www.yellowpages.com

Memorandum Order and Opinion dated February 28, 2008, issued by Judge DeMent in this matter, and related motions and briefs filed by the parties.

All information referenced in Alexander report dated August 8, 2007.