IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DISTRICT

JOHNCO MATERIALS, INC.,   CASE NO.: CV-06-2:06CV993-ID-SRW

    Plaintiff,

vs.

CONRAD YELVINGTON
DISTRIBUTORS, INC.,

    Defendant.
_____/

## DEFENDANT'S, CONRAD YELVINGTON DISTRIBUTORS, INC., RESPONSE TO PLAINTIFF'S MOTION TO EXCLUDE EXPERT TESTIMONY OF MARK KLEBE, DAVID BORDEN AND EUGENE HARTLEY

Defendant, CONRAD YELVINGTON DISTRIBUTORS, INC. ("CYDI"), hereby files its Response to Plaintiff's Motion to Exclude Expert Testimony of Mark Klebe, David Borden, and Eugene Hartley filed by plaintiff, JOHNCO MATERIALS, INC. ("JMI").

### LAY WITNESS MARK KLEBE

JMI argues that CYDI Chief Financial Officer should not be permitted to offer expert testimony on the issue of the damages suffered by CYDI as the result of JMI's breach of the Supply Agreement, and correctly asserts that CYDI does not offer Mr. Klebe as an expert in this case. Thus, JMI's motion is moot on its face. However, underlying JMI's motion is its incorrect assertion that Mr. Klebe may not offer opinion evidence on damages due to certain "assumptions" made by CYDI, which overlooks Fed.R.Evid. 701 and the body of case law permitting a party to offer evidence of its own damages.[1]

---

[1] This issue is also a subject of JMI's Motion in Limine (Dkt. 86). CYDI incorporates its response thereto in response to JMI's arguments raised here.

{034542-058 : KPARS/KPARS : 00547323.DOC; 2}

Fed.R.Evid. 701 provides that a non-expert witness may offer testimony in the form of opinions or inferences where those opinions or inferences are: a) rationally based on the perception of the witness, b) are helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and c) not based on scientific, technical or other specialized knowledge within the scope of Fed.R.Evid. 702. A claim that testimony consists of opinion testimony does not render it inadmissible. *SEC v. Texas Gulf Sulphur Co.*, 446 F.2d 1301, 1305 (2$^d$ Cir.), *cert. denied*, 404 U.S. 1005, 92 S.Ct. 561 (1971). "A lay witness in a federal court proceeding is permitted under Fed.R.Evid. 701 to offer an opinion on the basis of relevant historical or narrative facts that the witness perceived." *Teen-Ed, Inc. v. Kimball International, Inc.*, 620 F.2d 399, 403 (3d Cir. 1980). "The essential difference difference [between a lay witness and an expert] is that qualified expert may answer hypothetical questions. Thus, an expert witness may not only testify from 'facts or data ... perceived by' him, but also from what is 'made known to him at or before the hearing.' A projection of lost profits based on evidence of record regarding decreased sales of a certain product may not accurately be characterized as 'hypothetical.'" *Id.* at 404.

In *Teen-Ed*, the Third Circuit vacated a judgment and remanded for a new trial after the testimony of the company's CPA and bookkeeper were excluded because the district court determined that the proffered testimony on lost profits was expert testimony, and excluded the testimony because neither the CPA nor bookkeeper had been previously identified as an expert. *Teen-Ed*, 620 F.2d at 403-04. Specifically, Teen-Ed sought to prove damages by showing lost profits, and offered its licensed CPA who had served as the company's accountant since 1978 to provide a comparison of the company's gross sales reduced by the company's variable costs to determine net profit. The Third Circuit noted that the district court and both parties failed to

distinguish between opinion testimony which may be introduced by lay witnesses and that which requires experts. "The modern trend favors the admission of opinion testimony, provided that it is well founded on personal knowledge and susceptible to specific cross examination. ... The expression of opinions or inferences by a lay witness is permitted because of the qualification of Rule 701(a) that the factual predicate of the testimony be within the witness's perception." *Id.* at 403.

Turning to the facts of *Teen-Ed*, the Third Circuit found that the personal knowledge of appellant's balance sheets acquired by the CPA as its accountant "was clearly sufficient under Rule 602 to qualify him as a witness eligible under Rule 701 to testify to his opinion of how lost profits could be calculated and to inferences that he could draw from his perception of Teen-Ed's books." The fact that the CPA may also have been able to qualify as an expert witness on the use of accepted accounting principles in the calculation of business losses should not have prevented his testifying on the basis of his knowledge of appellant's records and calculation of lost profits from the data therein. *Id.* at 403.

Lay witnesses can also testify regarding "particularized knowledge" that a lay witness has "by virtue of his or her position" in a particular business. *American General Life Ins. Co. v. Schoenthal Family, LLC*, 2008 WL 160630, *5 (N.D.Ga. 2008) (citing *Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co., Ltd.*, 320 F.3d 1213, 1222 (11th Cir.2003) (quotation and citation omitted)). Specifically, courts throughout the country routinely find that an owner/officer of a company has the personal knowledge of their own business sufficient to offer opinion testimony on profits lost by the company as a result of another party's actions. *Miss. Chem. Corp. v. Dresser-Rand Co.*, 287 F.3d 359, 362 (5th Cir. 2002) (allowing corporation's director of risk management to testify as to lost profits due to his particularized knowledge about

the company's underlying accounts); *see also Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1175 (3d Cir.1993) (allowing Rule 701 testimony by the owner of a corporation as to the amount of lost profits); *In re Merritt Logan, Inc.*, 901 F.2d 349, 359 (3d Cir.1990) (allowing Rule 701 testimony by the principal shareholder of the plaintiff concerning that company's lost profits); *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 265 (2d Cir.1995) ("[A] president of a company, such as Cook, has 'personal knowledge of his business ... sufficient to make ... him eligible under Rule 701 to testify as to how lost profits could be calculated.' ") (internal citations and quotation marks omitted), *cert. denied*, 516 U.S. 1114, 116 S.Ct. 916, 133 L.Ed.2d 846 (1996).

Here, JMI seeks to exclude the opinion testimony of Mr. Klebe, CYDI's long time Chief Financial Officer and a Certified Public Accountant, due to certain "assumptions" made by CYDI in calculating lost profit damages for CYDI. However, as Chief Financial Officer of CYDI, Mr. Klebe's personal knowledge of the financial aspects of CYDI's operation is sufficient under Fed.R.Evid. 602 to qualify him as a witness eligible under Fed.R.Evid. 701 to testify to his opinion of how lost profits could be calculated and to inferences that he could draw from his perception of CYDI's books. Mr. Klebe's opinions as to CYDI's lost profits are rationally based on the perception of the witness, helpful to a clear understanding of the determination of the facts at issue, and not based on scientific, technical, or other specialized knowledge within the scope of Fed.R.Evid. 702. This type of calculation is one that Mr. Klebe would typically perform in his position as Chief Financial Officer for CYDI, and therefore, he has the type of "particularized knowledge" that makes him undoubtedly qualified to testify to lost profits of his company. *Tampa Bay*, 320 F.3d at 1222. As such, JMI's motion should be denied on these grounds.

Further, the testimony offered by Mr. Klebe on the issue of damages suffered by CYDI as

a result of JMI's breach of the Supply Agreement was given in the capacity of CYDI's Rule 30(b)(6) representative. Under Fed.R.Civ.P. 30(b)(6), CYDI designated Mr. Klebe to testify on its behalf regarding information known or reasonably available to CYDI. *See also* Moore's Federal Practice §30.25[3], 3rd ed. The duty to testify to information known or reasonably available to the company extends not only to facts, but also to subjective beliefs and opinions. *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006) (Rule 30(b)(6) designee does not give personal opinions, but presents corporation's position on topics in deposition notice).

Under Rule 30(b)(6), the "deponent must prepare the designee to the extent matters are reasonably available, whether from documents, past employees, or other sources." *Continental Casualty Company v. Compass Bank*, No. CA-04-0766-KD-C, 2006 WL 533510, at *19 (S.D. Ala. March 3, 2006) (quoting *Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 150-51 (S.D.N.Y. 1997)). The duty to present and prepare a Rule 30(b)(6) designee goes beyond matters personally known to that designee or to matters in which that designee was personally involved. *Id.* (citing *United States v. J.M. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C. 1996).

Here, even though argued by JMI in the context of proffering Mr. Klebe as an expert witness,[2] JMI's objected that Mr. Klebe's "methodology" is flawed because he relied on inadmissible hearsay evidence or facts not within his personal knowledge. However, as the Rule 30(b)(6) designee for CYDI, Mr. Klebe had an obligation to be armed with information

---

[2] Note that an expert witness is not required to do all the background work or have personal knowledge of each fact that forms the basis of the opinion, and can rely on inadmissible evidence as well. *See, e.g., United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (noting that expert witnesses are "Free to opine about a complicated matter without any firsthand knowledge of the facts in the case, and based upon otherwise inadmissible hearsay if the facts or data are 'of a type reasonably relied upon by experts in the particular field in forming opinions or inferences on the subject'").

reasonably available to CYDI from sources other than himself and beyond matters personally known to him or in which he was personally involved. Mr. Klebe fulfilled his duties and obligations as the Rule 30(b)(6) designee for CYDI by testifying to lost profits, and as such, JMI's motion should also be denied on these grounds.

Analyzing Mr. Klebe's testimony under Fed.R.Evid. 702 and 703 is inappropriate because he has not been offered as an expert by CYDI. Rather, the proper analysis of Mr. Klebe's testimony is under Fed.R.Evid. 701 and Fed.R.Civ.P. 30(b)(6). Applying the proper framework to Mr. Klebe's testimony, JMI's motion must fail.

### **EXPERT WITNESSES DAVID BORDEN AND EUGENE HARTLEY**

#### *THE LAW OF EXPERT WITNESSES GENERALLY*

The admission of expert evidence is governed by Federal Rule of Evidence 702, which states, in pertinent part:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

As explained by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), expert evidence must be both relevant and reliable to be admissible. *See Daubert*, 509 U.S. at 595. In *Daubert* and its progeny, the Supreme Court has held that Fed.R.Evid. 702 requires the trial court act as a "gatekeeper for the admissibility of expert testimony," to determine whether the opinion's reasoning and underlying methodology are valid and are applicable to the facts of the case. *See Id.* at 592-93; *see, e.g., Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152-53 (1999).

The Eleventh Circuit has established a three-part inquiry in which a court must engage in determining the admissibility of expert testimony under FRE 702: (1) whether the expert is qualified to testify competently regarding the matters he intends to address; (2) whether the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) whether the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *See City of Tuscaloosa v. Harcos Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998); *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1340-41 (11th Cir. 2003). The party offering the expert bears the burden of proving admissibility by a preponderance of the evidence. *See Rink v. Cheminova*, 400 F.3d at 1292 (citing *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999)).

To determine whether a witness is qualified to testify as an expert regarding the matters he intends to address, the Eleventh Circuit and other courts of appeal agree that a witness who possesses general knowledge of a subject may qualify as an expert despite lacking specialized training or experience, so long as his testimony would likely assist a trier of fact. *Grupo Televisa, S.A. v. Telemundo Communications Group, Inc.*, 2005 WL 5955701, 2 (S.D. Fla. 2005) (citing *United States v. Hensel*, 711 F.2d 1000, 1006 (11th Cir.1983) (holding that the trial court did not err in allowing a witness with an extensive background in arson investigation to testify as an expert in a case involving a shipboard fire even though the majority of his experience concerned fires on land); *see also Huval v. Offshore Pipelines, Inc.*, 86 F.3d 454. 457-58 (5th Cir.1996) (finding that broad, general experience in the insurance industry was sufficient to qualify witness as an expert even though witness had no experience working with insurance consultant or London broker); *Baumholser v. Amax Coal Co.*, 630 F.2d 550. 551 (7th

Cir.1980) (concluding that, in an action alleging damage from coal mine basting, geologist with little actual experience studying blasts from coal mining operations was qualified to testify as an expert)). For example, in *Maiz v. Virani,* a civil RICO claim involving fraudulent real estate transactions, the Eleventh Circuit found that a witness with "a Ph.D. in economics from Yale, extensive experience as a professional economist, and a substantial background in estimating damages" was qualified as an expert witness in assessing the loss suffered by plaintiff even though he had no real estate development experience. 253 F.3d 641, 665 (11th Cir.2001).

The Judge's role as gatekeeper under Daubert standard for determining admissibility of expert scientific testimony is not intended to supplant the adversary system or the role of the jury, in which vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence. *Allison v. McGhan Medical Corp.*, 184 F.3d 1300 (11th Cir. 1999) (citing Fed.R.Evid. 702)); see also Maiz v. Virani, 253 F.3d 641 (11th Cir. 2001); *U.S. v. 0.161 Acres of Land, more or less, situated in City of Birmingham, Jefferson County, Ala.,* 837 F.2d 1036 (11th Cir. 1998). An objection to an expert's testimony on ground of inadequacy of facts goes to weight of evidence rather than to its admissibility. *Dyer v. Traeger,* 357 So.2d 328 (Ala. 1978).

### *David Borden*

David Borden is offered to rebut JMI's expert's calculations of damages. JMI moved to exclude the testimony of Mr. Borden asserting Mr. Borden's testimony is contrary to the "law of the case." On February 28, 2008, this Court issued a Memorandum Opinion and Order, deciding that a "rational trier of fact [could not] award consequential, loss-of-profit damages to JMI for alleged profits from lost sales of oversize gravel and sand byproducts" because this was not

provided for in the Supply Agreement. (Doc. 78, pp. 23-24). Subsequent to this order, JMI provided a supplemental report by its expert, J. Lester Alexander, changing his expert opinions based on the order, which JMI asserts is in compliance with the "law of the case."[3] JMI argues that because CYDI did not supplement the expert report of Mr. Borden, his "methodology" is unreliable and should be excluded.

CYDI intends to call Mr. Borden as its expert to testify as to the damages purportedly suffered by JMI as a result of CYDI's alleged breach of contract as such were offered by Mr. Alexander. Mr. Borden testified regarding lost profit analysis of JMI as follows:

> BORDEN: ... In a lost profits calculation, you would not consider - - you would consider only the costs that were avoided, and those costs that would be - - that were incremental in nature, and there are some costs that are fixed that are not avoidable.
>
> And even though I don't agree with the not considering a substantial portion of other costs as being incremental expenses in considering only fuel, <u>I adopted Les Alexander's methodology for my calculation</u>. And what I did is I took the same revenue number, and then I subtracted out the annualized expense numbers, you know, just put them on a full-year basis just like I did the revenue, and I made the same adjustments for transportation, depletion, and same calculation that I did before the increase in fuel cost. Basically, what it indicates is that on an incremental basis with a hundred and fifty thousand tons, JMI would have been about break even. Actually I show a little bit of a loss.

(Borden, pp. 77; l. 6 – 78, l. 6) (emphasis added).[4]

The final calculation of JMI's lost profit damages necessarily included assumptions of sales and annual revenue for oversized gravel (4,486 tons per year at $8.50 per ton for total

---

[3] Mr. Alexander's Supplemental Report reverses field from his initial Summary Report and contains novel opinions regarding market demand, an available third-party buyer, a newly applied "joint product costing method," discounted present value, prejudgment interest, and JMI's profitability in selling 150,000 tons of No. 67 gravel only to CYDI under the Supply Agreement, which is the subject of one of CYDI's motions in limine currently pending with the Court.

[4] Relevant excerpts and exhibits of Mr. Borden's deposition transcript taken on December 21, 2007 are attached as Exhibit A.

oversized gravel annual revenue of $38,131) and sand (15,004 tons per year x $2.00 per ton for total sand annual revenue of $30,008) because such was necessary to directly rebut Mr. Alexander's calculation of damages. However, Mr. Borden qualified his calculation by stating, "...I recognize there are legal arguments about whether oversize [gravel] and sand should be included in this or not, and I'm not getting into that. But I – For sake of what I did, I included oversized [gravel] and sand." (Borden, p. 74, ll. 7-21). As a result of CYDI's motion for partial summary judgment on the issue of damages, and consistent with Mr. Borden's testimony, this Court agreed with CYDI, and thereby Borden, that the proper measure of damages did not include losses of revenue for oversized gravel and sand. Mr. Borden's base figures, assumptions, and methodology have not changed by this ruling, therefore, it was not necessary for Mr. Borden to supplement his expert report.

In support of its "law of the case" argument, JMI claimed that an expert witness should be precluded from testifying if his opinion is not in complete alignment with a Court order, citing *Fox v. Mazda Corp. of America*, 686 F.2d 1190, 1194 (10th Cir. 1989). This is not the holding of the case. In *Fox*, the trial court held in the first case that damages would be limited to "the loss of RX-7s that [plaintiffs] would have received if they had not been allocated or distributed to new dealers." *Fox*, 686 F.2d at 1194. The case was appealed and remanded to the trial court for a second time, where the plaintiffs' sole expert testimony was based on a "damage model which projected appellants lost profits and loss of dealership market value;" an entirely separate and previously excluded category of damages. *Fox*, 686 F.2d at 1194. The Court precluded the expert from testifying because his "proffered testimony went well beyond the bounds of our remand." *Fox*, 686 F.2d at 1195. This is not the situation here.

Again, Mr. Borden included revenues from the sale of oversized gravel and sand in

challenging Mr. Alexander's calculations of lost profits because JMI claimed lost profits owed to it by CYDI for oversized gravel and sand and it was important to have a side-by-side comparison of figures with JMI's expert who included oversized gravel and sand. Long before the Court's order, Mr. Borden expressly advised that the inclusion of such by Mr. Alexander was questionable given his understanding of the law. However, the inclusion, or more specifically non-inclusion, of oversized gravel and sand does not change Mr. Borden's analysis or methodology. Therefore, his expert testimony should not be excluded on these grounds.

JMI frames its attack on Mr. Borden's "methodology," but his methodology is simple math and the identical methodology used by JMI's expert. JMI's argument appears to be that Mr. Borden's testimony is not going to be helpful to assist the trier of fact because of the order granting partial summary judgment.

Here, JMI filed a one-count lawsuit for breach of the Supply Agreement. In the event that CYDI is found liable for the breach, JMI would be entitled to damages as determined by its lost profits over the term of the contract. As Mr. Borden is a CPA and chair of an accounting firm in Montgomery, Alabama, Mr. Borden provides helpful testimony in understanding JMI's calculation of lost profits, the costs associated with the production and sale of No. 67 gravel by JMI; all based on JMI's records, books and other materials provided to him. Mr. Borden's testimony is also helpful in understanding JMI's expert testimony and provides necessary rebuttal testimony to Mr. Alexander's analysis and techniques. The analysis completed by Mr. Borden is not regularly known to a lay person and is of the type that will assist a jury in determining JMI's lost profits, if any, as a result of CYDI's alleged breach of the Supply Agreement. As such, Mr. Borden's expert witness testimony should not be excluded.

*Eugene Hartley*

Finally, JMI moved to exclude CYDI's expert M. Eugene Hartley, an economic exploration geologist. As stated, *supra*, expert testimony is admissible as long as the expert is qualified, the method by which he reaches his conclusions is sufficiently reliable, and his testimony assists the trier of fact to understand the evidence. FRE 702; *See also City of Tuscaloosa*, 158 F.3d at 562. However, the Eleventh Circuit has held, "if an expert's testimony is based on his experience, and not on science, then such non-scientific expert testimony is not to be held to the *Daubert* standard." *Ages Group, L.P. v. Raytheon Aircraft Company, Inc.*, 22 F.Supp.2d 1310 (M.D. Ala. 1998) (citing *Michigan Millers Mutual Insurance Corp. v. Benfield*, 140 F.3d 915, 920 n. 15 (11th Cir. 1998)). In *Ages*, the plaintiff provided testimony from two individuals experienced in electronics and/or electronic surveillance to establish the use of certain devices that were relevant to the case. *Ages*, 22 F.Supp.2d at 1316. Each witness offered his opinion based on experience. Upon defendants' objection to this witness testimony, the Court held that, in light of the case precedent that opinion testimony of experts based on their experience rather than science, the expert testimony does not have to satisfy the requirements for the admission of scientific evidence. *Id.* at 1317.

With a Bachelors of Science and Masters of Science in geology, Mr. Hartley specializes in the exploration, evaluation and development in high cal limestone, aggregates and other industrial minerals. (Hartley's Deposition, Exh. 2, p. 7).[5] He was hired by CYDI to inspect JMI's land and plant and determine if the operation of the company was feasible. (Hartley Deposition, p. 25, ll. 7-14; p. 26, ll. 4-17). In his thirty years of experience, he has located, acquired and started several mines and quarries, mainly aggregates, and is highly experienced in

---

[5] Relevant excerpts and exhibits of Mr. Hartley's deposition transcript taken on December 20, 2007 are attached as Exhibit B.

mining company acquisitions and valuations. (Hartley's Deposition, Exh. 2, p. 7). Specifically, Mr. Hartley has done the acquisition, exploration, zoning, reserves, mine design, and permitting supervision of seventeen sites that became quarries, which included several aggregate and industrial mineral quarries in Alabama, Georgia, Tennessee and Utah since 1994. (*Id.*) He has also done the discovery, acquisition, and initial engineering of several rail spurs in Alabama and Tennessee for aggregate mines. (Hartley's Deposition, Exh. 2, p. 1). Further, Mr. Hartley has done due diligence for dozens of sites and companies acquisitions, including cement raw materials. (*Id.*) Since 1973, Mr. Hartley has directed field exploration, mine evaluation, or brokering of aggregates such as crushed stone, sand, and gravel, in Alabama, Arizona, California, Colorado, Florida, Georgia, Maine, Mississippi, Utah, New Jersey, New York, South Carolina, Tennessee, Utah, eastern Canada, Antigua, Barbados, and Switzerland. (*Id.*)

During his deposition and in his expert report, Mr. Hartley opined on the economic viability of JMI's mining operation and concluded that he did not believe that the operation was going to be successful from the outset. (Hartley, p. 99, l. 15 – p. 100, l. 4). This was based on a number of observations of and reasons given by Mr. Hartley, each of which were based on his vast knowledge of the business, his review of materials relevant to the case, and his thirty-year experience evaluating mining companies.

JMI objected to Mr. Hartley's opinion testimony on the basis that it was not reliable under *Daubert* because Mr. Hartley offered explanations based on his experience. JMI's contention is without merit, and contrary to the law of expert testimony. Experience is one of the grounds of specialized knowledge of an expert, and when an expert's testimony is based on his experience, "then such non-scientific expert testimony is not to be held to the *Daubert* standard." *Ages,* 22 F.Supp.2d 1310 (citing *Michigan Millers,* 140 F.3d at 920 n. 15)).

As stated previously, JMI sued CYDI for breach of the Supply Agreement, and if CYDI is found liable for the breach, JMI would be entitled to damages as determined by its lost profits over the five-year term of the contract. A factor in determining potential lost profits is the economic viability of JMI's operations. If, due to the geology of the land, operating plant, owners and managers, or for any other reason, JMI would not have been economically viable or would have ceased operations entirely, such should be taken into account when determining JMI's damages. The geology and Mr. Hartley's testimony is important to understanding the sand and gravel deposits of central Alabama, why JMI was not economically viable, and why, even if CYDI breached the Supply Agreement, JMI is not able to recover its alleged lost profits for the entire term of the Supply Agreement.

In sum, Mr. Hartley is qualified and competent to testify to matters involving geology and mining operations, his conclusions are sufficiently reliable based on his vast experience, and his testimony assists the trier of fact to understand the damages issues in the case. This is the only standard Mr. Hartley is required to meet. As such, his testimony complies with Fed.R.Evid. 702 and should not be excluded.

Wherefore, CYDI asks the Court to deny JMI's motion in limine in its entirety.

Cobb Cole

/s/ Thomas J. Leek
THOMAS J. LEEK
FLA. BAR NO. 0116408
150 Magnolia Avenue
Post Office Box 2491
Daytona Beach, FL 32115-2491
Telephone: (386) 255-8171
Facsimile: (386) 323-9255
E-mail: Tom.Leek@CobbCole.com
CO-COUNSEL FOR DEFENDANT

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 17th day of March, 2008, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following CM/ECF participants and served by U.S Mail and Electronic Mail a copy of the foregoing on the following non-CM/ECF participants:

H. Gregory Pearson, Esquire
Charles E. Harrison, Esquire
Junkin, Pearson, Harrison, & Junkin, L.L.C.
601 Greensboro Avenue
Suite 600, Alston Place
Tuscaloosa, AL 35401

J. David Martin, Esquire
Copeland, Franco, Screws & Gill, P.A.
444 South Perry Street (36104)
Post Office Box 347
Montgomery, AL 36101

/s/ Thomas J. Leek